## UNITED STATES ex rel. DALLAO v. CORSI, Commissioner of Immigration.

District Court, S. D. New York.
Jan. 29, 1932.

Edward J. Garity, of New York City, for relator.

George Z. Medalie, U. S. Atty., and Ira Koenig, Asst. U. S. Atty., both of New York City, for respondent.

CAFFEY, District Judge.

Relator was born in Italy. At the time of his father's naturalization he was a minor, 19 years old, residing in his native country. The naturalization of the father therefore did not make the son also an American citizen. Citizenship of a nonresident foreign born minor child, if derived through naturalization of a parent, commences only "at the time such minor child begins to reside permanently in the United States." 8 USCA § 8; United States ex rel. Patton v. Tod (C. C. A.) 297 F. 385, 393.

When in June, 1928, his father was naturalized, as well as when in September, 1928, pursuant to section 9 of the Immigration Act of 1924 (8 USCA § 209), on the father's petition the American Consul in Italy was instructed by the higher executive officials at Washington to issue a nonquota visa, the relator was entitled to admission. It was his admissibility then that entitled

him to a nonquota visa. This is a crucial fact in the present litigation. It must be borne steadily in mind as a basis for reaching a proper conclusion.

The sole justification for a nonquota visa was that, in conformity with section 4 (a) of the act of 1924, as amended May 29, 1928, § 2 (8 USCA § 204 (a), the relator was in September, 1928, "the unmarried child under twenty-one years of age * * * of a citizen of the United States." In 1931, however, when he applied for and procured a visa, and when he sought admission, he was 22. He was not "under twenty-one years of age." He was therefore no longer entitled to gain American citizenship by beginning permanent residence in the United States (8 USCA § 8); nor did his right to enter as a nonquota immigrant longer survive (Id., § 204). His right with respect to entry, as it had existed in 1928 and continued up to the end of his minority, had by 1931 lapsed or terminated, through passage of time, by his ceasing to be a minor.

The conclusion stated seems clear, first, from the provisions of the statute defining the effect of granting the father's petition under section 9 of the 1924 act. In subdivision (f) of the section (8 USCA § 209 (f) it is provided as follows: "Nothing in this section shall be construed to entitle an immigrant, in respect of whom a petition under this section is granted, to enter the United States as a nonquota immigrant, if, upon arrival in the United States, he is found not to be a nonquota immigrant."

As already pointed out, section 4 (a), defining who may be a nonquota immigrant, so far as it affects relator, limits him to "twenty-one years of age." In consequence, in 1931 upon his arrival here, as was "found" by the Immigration Service and is proved by his own testimony, the relator was not "a non-quota immigrant," and hence could get no benefit from what had been done in furtherance of his father's petition. Section 9 (f) prohibits the enjoyment by him of any such advantage.

Again, in section 2 (g) of the 1924 act (8 USCA § 202 (g) it is provided as follows: "Nothing in this act shall be construed to entitle an immigrant, to whom an immigration visa has been issued, to enter the United States, if, upon arrival in the United States, he is found to be inadmissible to the United States under the immigration laws."

Section 13 of the 1924 act (8 USCA § 213), so far as applicable to relator, in subdivision (a) (3) prescribes that "No immigrant shall be admitted to the United States unless he * * * is a nonquota immigrant if specified in the visa in the immigration visa as such." When he came to an American port the relator was "specified in the visa in the immigration visa" to be a "non-quota immigrant." This section, however, prohibits his admission if he "is" a nonquota immigrant, and, as previously demonstrated, upon arrival he was not in fact a nonquota immigrant. The relator being "inadmissible to the United States under the immigration laws," section 2 (g) denies to issuance and possession of the visa he held the effect of overriding the statutory prohibition against his entry.

Both limiting clauses, the one dealing with the petition for a visa and the other dealing with the visa itself, speak of admissibility as of the date of reaching the United States. Standing alone, these provisions therefore seem to me sufficient to require denial of entry under a nonquota visa, pursuant to section 4 (a), to one who, seeking entry solely under and coming squarely within that section, is at the time of arrival above the age of 21.

There is a further and, as I believe, convincing reason why what has just been said must be so; or perhaps it would be better to say that there is another way of putting the matter.

Obviously, the petition of the father was based, and was approved, exclusively upon the ground that by his naturalization the relator had become qualified for American citizenship; there remaining only the single additional step of the son taking up permanent residence in the United States (8 USCA § 8). There is an explicit limitation, however, upon an alien child, born abroad and residing abroad, acquiring citizenship through naturalization of a parent. The citizenship can attach only when, during minority, the child "begins to reside permanently in the United States." It is peremptorily required that permanent residence begin during minority.

■ The naturalization laws and the immigration laws deal with aliens. They are in pari materia. They are therefore to be construed together. Ryan v. Carter, 93 U. S. 78, 84, 23 L. Ed. 807. When therefore a provision is found in the immigration laws, designed to allow a naturalized parent to bring to this country his alien child on a nonquota visa, it would nullify the restriction in the naturalization laws upon the terms of

accrual of citizenship to the child, if entry upon the nonquota visa were permitted after termination of minority.

In order to clarify and emphasize the situation, it is worth while again to note the terms of section 13 of the 1924 act (8 USCA § 213). This directly prohibits admission of an immigrant unless he comply with some one of the four numbered clauses in subdivision (a). The third of these only is pertinent to the case of the relator. It prescribes that he shall not be admitted "unless he * * * is a nonquota immigrant if specified in the visa in the immigration visa as such." In other words, the requirement affecting the relator is that whenever an immigrant is specified, as the relator was specified, "in the visa in the immigration visa" to be a nonquota immigrant, he must in fact be a "non-quota immigrant." Relator, when he arrived, not being in fact a nonquota immigrant, within the meaning of section 4 (a), he was inadmissible.

██ Counsel for the relator urges that section 107 of the State Department's instructions to consuls on "Admission of Aliens to the United States," No. 926, diplomatic serial No. 273, entitles relator to admission. This informs consuls with regard to the matter as follows: "The right of alien relatives of American citizens to nonquota status * * * under section 4 (a) * * * is established as of the date of the filing of a properly executed petition with the Commissioner General of Immigration and will not be affected by any changes occurring between the time the petition is filed and the arrival of the applicants at a port of entry in the United States unless such changes in circumstances are brought about by the applicants themselves."

It is necessarily comprehended within the argument, for example, that the relator could have postponed for many years making use of the communication to the consul and, upon his own choice, at any time get from the consul a nonquota visa which would assure him admission into the United States; and this notwithstanding that long previously he had ceased to be a minor, and therefore he himself was no longer within the terms nor his visa within the purpose of the statutory provisions governing entry.

In order to give the instructions rational significance, however, it is not necessary to attribute to them such an extreme meaning. A complete field of operation may be assigned to the words employed if they be construed as merely designed to relieve the consuls of the duty of inquiry at their posts abroad in respect to action already taken in Washington. Otherwise put, they are told to confine themselves, in cases of this kind, to issuing the visas and to leave the responsibility of determining admissibility, where it had been placed by the statute, upon officials at American ports of entry. Furthermore, if the instructions were deemed to have been phrased with the intention to vary or disregard the statute, they would be futile and of no effect. Johnson v. Keating (C. C. A.) 17 F.(2d) 50, 52. I ignore the additional feature that delay of three years in asking for a visa may well be treated as a "change" in circumstances "occurring" between the time the petition was filed and the date the applicant arrived at a port of entry in the United States which, within the meaning of the saving clause at the end of section 107, was "brought about" by the applicant himself.

██ In the record before the Labor Department, no explanation was given of the delay just mentioned in the relator coming to the United States. By affidavit, submitted to me, it is sought to furnish the explanation. It is doubtful whether the court can properly consider the affidavit; but, even if it did, there is nothing material in it. It contains only a statement that the relator was in the Italian military service from May 2, 1929, to September 8, 1930. Between issuance of instructions to the consul in September, 1928, and May, 1929, there was ample opportunity for the relator, while still under 21, to seek the nonquota visa, and to procure admission to the United States.

Writ dismissed.