Travis Damien ASHTON, Petitioner,

v.

Alberto GONZALES, Attorney General
of the United States,*
Respondent.

No. 03–41038.

United States Court of Appeals,
Second Circuit.

Submitted Aug. 29, 2005.

Decided Dec. 7, 2005.

H. Raymond Fasano, Madeo & Fasano
(Donald F. Madeo, on the brief), New
York, New York, for Petitioner.

Thomas F. Corcoran, Assistant United
States Attorney, District of Maryland
(David Kelley, United States Attorney for
the Southern District of New York, on the
brief), Baltimore, Maryland, for Respondent.

Before: WALKER, Chief Judge,
CALABRESI and STRAUB, Circuit
Judges.

JOHN M. WALKER, JR., Chief Judge.

Petitioner Travis Ashton, born in Trinidad and Tobago, petitions for review of a
November 1, 2003, order of the Board of
Immigration Appeals ("BIA") affirming
the April 30, 2002, decision of an Immigration Judge ("IJ") ordering that Ashton be
removed to Trinidad and Tobago pursuant
to 8 U.S.C. § 1227(a)(2)(A)(iii) because
Ashton is an alien who has been convicted
of an aggravated felony. Ashton argues
that he is not deportable because he is not
an alien; he claims to have achieved Unit-

* Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Gonzalez is substituted for his predecessor, John Ashcroft.

ed States citizenship pursuant to 8 U.S.C. § 1432(a) (1997) as a result of his mother's naturalization in 1997. The Immigration Judge correctly rejected this claim, as do we. Because Ashton is not a United States citizen and has been ordered removed because he was convicted of an aggravated felony, this court lacks jurisdiction to hear his petition for review of the BIA's order. *See* 8 U.S.C. § 1252(a)(2)(C).

## I. BACKGROUND

The relevant facts are uncontested. Petitioner Travis Ashton is a citizen of Trinidad and Tobago, where he was born in 1979 and raised for seven or eight years. Ashton's mother entered the United States some time in or after 1986, and Ashton entered the country in July 1987. He was admitted pursuant to a nonimmigrant visa that authorized him to remain in the country as a visitor for pleasure for no more than six months. Ashton, however, did not depart the country when his visa expired, and he has lived in the United States continuously since 1987.

In June 1997, when Ashton was 17 years old, his mother became a naturalized U.S. citizen. Ashton did not take any immediate steps to adjust his immigration status. In March 2000, when he was 20 years old, Ashton became a lawful permanent resident of the United States pursuant to 8 U.S.C. § 1255.

Less than a year earlier, in September 1999, Ashton had molested two young girls who were three and four years old. The Kings County, New York, district attorney filed criminal charges based on this incident, and in November 2000, shortly after his twenty-first birthday, Ashton pleaded guilty in New York state court to first-degree sexual abuse in violation of New York Penal Law § 130.65. In January 2001, Ashton was sentenced to six months in prison to be followed by five years' probation and was designated a level-one sex offender.

In March 2001, the Immigration and Naturalization Service ("INS")[2] initiated removal proceedings against Ashton on the basis that the sex offense to which he pleaded guilty was an "aggravated felony" as defined by 8 U.S.C. § 1101(a)(43)(A) and that Ashton was therefore deportable under 8 U.S.C. § 1227(a)(2)(A)(iii).[3] In removal proceedings before an IJ, Ashton argued that he was not deportable because he was actually a United States citizen as a result of his mother's naturalization in 1997. The IJ rejected Ashton's argument by written decision on April 30, 2002, and ordered his removal to Trinidad and Tobago. On appeal, the BIA summarily affirmed the IJ's decision. Ashton petitions this court for review.

## II. DISCUSSION

█ Ordinarily we lack jurisdiction over petitions for review, like this one, brought by a petitioner who has been ordered removed because he was convicted of an aggravated felony. *See* 8 U.S.C.

---

**2.** Responsibility for enforcing immigration laws now rests with the Bureau of Immigration and Customs Enforcement ("BICE"), a unit of the Department of Homeland Security. Because the proceedings reviewed in this opinion were conducted before the INS was reconstituted as the BICE, we refer in this opinion to the INS.

**3.** Section 1227(a)(2)(A)(iii) provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." Section 1101(a)(43)(A) defines "aggravated felony" to include "sexual abuse of a minor." The versions of these sections currently in effect are identical in all material respects to those in effect both when proceedings were initiated against Ashton and at the time of his guilty plea in state court.

§ 1252(a)(2)(C). We do, however, have jurisdiction to determine whether we have jurisdiction—in this case, to determine whether Ashton is in fact an alien whose petition is unreviewable under § 1252(a)(2)(C). If Ashton is a United States citizen, then § 1252(a)(2)(C) cannot bar his petition. *See Brissett v. Ashcroft,* 363 F.3d 130, 133 (2d Cir.2004); *Drakes v. Ashcroft,* 323 F.3d 189, 190 (2d Cir.2003).

Ashton's argument, rejected by the IJ and the BIA, that he is a United States citizen relies on his mother's naturalization in 1997 and the operation of § 321(a) of the Immigration and Nationality Act of 1952 ("INA"), codified at 8 U.S.C. § 1432(a) (1997).[4] We review the IJ's decision directly where, as here, the BIA affirmed that decision without opinion. *See Secaida–Rosales v. INS,* 331 F.3d 297, 305 (2d Cir.2003).

This case turns on the interpretation of § 321(a) of the INA, a statute administered by the INS. When, as in this case, a statute has been interpreted by an IJ and the BIA has summarily affirmed that interpretation, we do not accord the IJ's interpretation the deference described in *Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *See Shi Liang Lin v. U.S. Dep't of Justice,* 416 F.3d 184, 191 (2d Cir.2005). Such IJ interpretations may merit the lesser form of deference established by *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct.

161, 89 L.Ed. 124 (1944), which directs us to consider the persuasiveness of an agency interpretation. *See Shi Liang Lin,* 416 F.3d at 191. But we need not decide whether *Skidmore* deference extends to summarily affirmed IJ decisions, because even without deferring to the IJ's decision, we reject Ashton's proposed interpretation of § 321.

To determine whether Ashton obtained U.S. citizenship as a result of his mother's naturalization, we apply the law in effect when Ashton fulfilled the last requirement for derivative citizenship. *See Rodriguez–Tejedor,* 23 I. & N. Dec. 153, 163, 2001 WL 865412 (BIA 2001). Whether he fulfilled the requirements at all is the subject of this dispute, but Ashton contends that he did so in 1997. Section 321(a) of the INA, 8 U.S.C. § 1432(a), was in effect in 1997 and therefore governs Ashton's claim for citizenship. It provides that a non-citizen child like Ashton, who was born out of wedlock and whose paternity has not been legally established, becomes a U.S. citizen upon his mother's naturalization provided (1) the mother is naturalized while the child is under 18 years old and (2) the child "is residing in the United States pursuant to a lawful admission for permanent residence at the time of the [mother's] naturalization ... or thereafter begins to reside permanently in the United States while under the age of eighteen years." 8 U.S.C. § 1432(a)(5).[5] A child who achieves

---

4. Because the parties refer to this statute as § 321(a), so do we. Section 321 was repealed in 2000. *See* Child Citizenship Act of 2000, Pub.L. No. 106–395, § 103(a), 114 Stat. 1631, 1632.

5. The relevant text of § 321 is as follows:

(a) A child born outside of the United States of alien parents ... becomes a citizen of the United States upon fulfillment of the following conditions: ...

(3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation; and if

(4) Such naturalization takes place while such child is under the age of eighteen years; and

(5) Such child is residing in the United States pursuant to a lawful admission for

derivative citizenship through this provision does so automatically upon fulfilling the specified conditions. *See Fuentes–Martinez*, 21 I. & N. Dec. 893, 896, 1997 WL 219496 (BIA 1997).

There is no dispute that Ashton was only 17 when his mother was naturalized; there is also no dispute that, when his mother was naturalized, Ashton was not "residing in the United States pursuant to a lawful admission for permanent residence." Ashton's entire case therefore turns on whether, after his mother's naturalization in 1997 but before he turned 18, Ashton "beg[an] to reside permanently in the United States."

Ashton argues that after his mother was naturalized, he began to reside permanently in the United States for purposes of § 321(a) because he and his mother discussed his future and they decided that he would stay in the United States permanently. In short, Ashton argues that his *intent* to reside permanently in the United States, coupled with his presence here, was sufficient to establish that he *did* reside here permanently. We disagree. Although a person's intent to call a certain place home is relevant to establishing his domicile for purposes of diversity jurisdiction, *see Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir.2000), a child's bare subjective intent to stay in the United States is insufficient to establish that he resides here permanently for purposes of § 321(a). We believe that there must be some objective official manifestation of the child's permanent residence, but we express no view as to what would satisfy § 321(a)'s requirements other than that petitioner fails to meet that standard here.

The Government advances two arguments in support of its contention that "to reside permanently" must mean to be a lawful permanent resident. First, the government argues that the definitional sections of the INA support its position. Section 1101(a)(33) of Title 8 U.S.C. defines "residence" as a person's "principal, actual dwelling place in fact, without regard to intent." 8 U.S.C. § 1101(a)(33). To the extent that this definition directs us to disregard intent in determining residence, it supports our own view that whether one "resides permanently" in the United States within the meaning of § 321(a) cannot be a function solely of intent. But the section does not answer the question before us: what it means to "begin to reside permanently" in the United States.

Another section, § 1101(a)(31), defines "permanent" to mean "a relationship of continuing or lasting nature, as distinguished from temporary, but a relationship may be permanent even though it is one that may be dissolved eventually at the instance either of the United States or of the individual, in accordance with law." 8 U.S.C. § 1101(a)(31). The government emphasizes the phrase "in accordance with law" to argue that one cannot "reside permanently" unless the resider is a *lawful* permanent resident. But the phrase cannot bear the weight the government places on it; "in accordance with law" modifies "dissolved" (a relationship may be permanent even if it "may be dissolved . . . in accordance with law"). *Id.* Nothing in the definition of § 1101(a)(31) suggests that to be "permanent," a "relationship" must be "in accordance with law."

Second, the government cites several cases for the proposition that "begins to

permanent residence at the time of the naturalization of the parent . . . naturalized under clause . . . (3) of this subsection, or thereafter begins to reside perma-

nently in the United States while under the age of eighteen years.

8 U.S.C. § 1432 (1997).

reside permanently" must mean, at least, that one's residence must have had a lawful origin. We disagree. First, most of those cases, including the only one that would be binding authority upon us, *United States ex rel. Patton v. Tod*, 297 F. 385 (2d Cir.1924), involve an earlier version of the statute governing derivative citizenship. Second, many of those cases turn entirely on the fact that the persons claiming derivative citizenship based on their parents' naturalization were categorically excluded from admission to the United States from the moment they set foot here. *See Patton*, 297 F. at 394–95; *United States ex rel. Garos v. Reimer*, 24 F.Supp. 869, 870 (S.D.N.Y.1938); *United States ex rel. Dallao v. Corsi*, 55 F.2d 941, 942 (S.D.N.Y.1932); *United States ex rel. Goldman v. Tod*, 3 F.2d 836, 839 (N.D.N.Y.1924). Ashton, however, was admitted legally into the United States (though his presence became illegal once his visa expired), and until he was convicted of sexual abuse, he did not belong to a class of persons categorically forbidden from immigrating. *See* 8 U.S.C. § 1182(a)(2)(A)(i)(I). Because of these distinctions, we find the cited cases unhelpful.

Ultimately, the proper interpretation of INA § 321(a) is a question we need not reach. Whatever the deficiencies of the government's position, that of petitioner is plainly incorrect. We find no support in the statute for the position that "begins to reside permanently" means no more than to form an intent to remain in the United States. We find it implausible that Congress would mean for naturalization under the second prong of § 321(a) to turn entirely on such purely subjective intent. And this is especially so given that children who might qualify for naturalization based upon residence *before* their mothers' naturalization are subject to the far more onerous requirement under the first part of § 321(a) of acquiring lawful permanent residency. Moreover, our conclusion that subjective intent alone is insufficient to satisfy § 321(a) is informed by the Supreme Court's instruction that "when doubts exist concerning a grant of [citizenship], generally at least, they should be resolved in favor of the United States and against the claimant." *United States v. Manzi*, 276 U.S. 463, 467, 48 S.Ct. 328, 72 L.Ed. 654 (1928).

We have no doubt from the structure and context of § 321(a) as a whole that a child who acquires lawful permanent residency would certainly satisfy § 321(a)'s requirements, and we do not rule out that some lesser official objective manifestation might also be sufficient. Here, however, because Ashton, who neither applied for nor received lawful-permanent-resident status while under 18 years of age, cannot point to any such official objective manifestation, his claim for citizenship fails.

### III. CONCLUSION

Because the IJ ordered Ashton, a noncitizen, removed pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii), we lack jurisdiction over his petition. The petition is DISMISSED.