11-5089-ag
*Nwozuzu v. Holder*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2012

(Argued: April 9, 2013     Decided: August 12, 2013)

Docket No. 11-5089-ag

_____

KELECHI GERALD NWOZUZU, AKA GERALD K. NWOZUZU,

*Petitioner,*

v.

ERIC H. HOLDER, JR., UNITED STATES ATTORNEY GENERAL,

*Respondent.*

_____

Before:

WALKER and CHIN, *Circuit Judges,* and
RESTANI, *Judge.*[*]

_____

Petition for review of a decision of the Board of

Immigration Appeals dismissing an appeal of an immigration

judge's decision denying petitioner's motion to terminate

_____

[*] The Honorable Jane A. Restani, of the United States
Court of International Trade, sitting by designation.

his removal proceedings. Petitioner contends that his removal is improper because he is a United States citizen by operation of a former provision of the Immigration and Nationality Act. We grant the petition for review and remand this matter to the Board of Immigration Appeals for further proceedings not inconsistent with this opinion.

Petition GRANTED and case REMANDED.

---

JOSHUA E. BARDAVID, Law Office of Joshua E. Bardavid (Theodore N. Cox, Law Office of Theodore N. Cox, *on the brief*), New York, New York, *for Petitioner*.

ERNESTO H. MOLINA, Assistant Director (Stuart F. Delery, Acting Assistant Attorney General, Jaime M. Dowd, Senior Litigation Counsel, *on the brief*), Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, District of Columbia, *for Respondent*.

---

CHIN, *Circuit Judge*

Petitioner Kelechi Gerald Nwozuzu was born in Nigeria and came to this country when he was four years

old.  When he was seventeen, his parents were naturalized as United States citizens.  The question presented is whether Nwozuzu's failure to become a lawful permanent resident before turning eighteen years old bars him from claiming derivative citizenship from his parents.  We hold it does not.

### STATEMENT OF THE CASE

**A.  Section 321(a)**

In considering Nwozuzu's claim, this Court must "apply the law in effect when [petitioner] fulfilled the last requirement for derivative citizenship."  *Ashton v. Gonzales,* 431 F.3d 95, 97 (2d Cir. 2005).  Here, the law in effect when seventeen-year old Nwozuzu applied for lawful permanent residence status after his parents were naturalized was former section 321(a) of the Immigration and Nationality Act (the "INA"), 8 U.S.C. § 1432(a) (1994) (repealed 2000) ("section 321(a)").[1]  Section 321(a) provided in pertinent part:

---

[1]    This section was repealed by the Child Citizenship Act of 2000 § 103, Pub. L. 106-395, 114 Stat. 1631, 1632.

> A child born outside of the United
> States of alien parents . . .
> becomes a citizen of the United
> States upon fulfillment of the
> following conditions:
>
> (1)  The naturalization of both
>      parents; . . .
>
> . . . and if
>
> (4)  Such naturalization takes place
>      while such child is under the
>      age of eighteen years; and
>
> (5)  Such child is residing in the
>      United States pursuant to a
>      lawful admission for permanent
>      residence at the time of the
>      naturalization of the parent
>      last naturalized . . . or
>      thereafter begins to reside
>      permanently in the United States
>      while under the age of eighteen
>      years.

8 U.S.C. § 1432(a).[2]

A petitioner could satisfy the requirements of

section 321(a)(5) in two ways.  Under the first clause, a

minor who was a lawful permanent resident automatically

---

[2]    In circumstances where one parent was deceased, the
parents were legally separated, or the child was born out of
wedlock (with paternity not established by legitimation), the
naturalization of one parent -- the surviving parent, the parent
with legal custody, or the mother, respectively -- was
sufficient.  8 U.S.C. § 1432(a)(2)-(3), (5).

-4-

became a citizen at the time the last parent was naturalized. Under the second clause, a minor could derive citizenship if, after the last parent naturalized, he "beg[an] to reside permanently in the United States while under the age of eighteen years." *Id.* It is this second clause upon which Nwozuzu's claim is based.

B. *Facts*

The facts are undisputed. Nwozuzu was born on March 8, 1977 in Nigeria. In 1982, he entered the United States as the child of F-1 nonimmigrant students. In 1990, his father filed an immediate relative visa petition, Form I-130, on Nwozuzu's behalf, which was approved in March 1993. In 1994, both his parents were naturalized as U.S. citizens. On February 6, 1995, at the age of seventeen, Nwozuzu applied for an adjustment of status to become a lawful permanent resident. His application was not decided at that time.[3]

---

[3] The record is unclear as to why the application was not decided. Nwozuzu's father recalled that the application was not approved because Nwozuzu did not have his passport at the initial hearing, which was then rescheduled for a date after he left the country, as discussed below. In his brief to the BIA,

Five months later, Nwozuzu filed a Form I-131 "Application for Travel Document" to visit his ailing grandmother in Nigeria, but he left for Nigeria before that application was approved.  On August 21, 1995, Nwozuzu was denied readmittance because he had left the country without obtaining a travel document.  He was readmitted on December 12, 1998, after becoming a lawful permanent resident at the age of 21.

On January 7, 2004, Nwozuzu was convicted of:  (1) criminal possession of a weapon in the third degree, involving a loaded firearm, in violation of N.Y. Penal Law § 265.02(4); (2) criminal possession of a weapon in the fourth degree, involving a loaded firearm, in violation of N.Y. Penal Law § 265.01(1); and (3) unlawful possession of marijuana, in violation of N.Y. Penal Law § 221.05.

## C.  *Procedural History*

On June 16, 2005, the Department of Homeland Security ("DHS") filed a Notice to Appear charging Nwozuzu with removability under section 237(a)(2)(C) of the INA, 8

however, Nwozuzu represented that the initial hearing was rescheduled because of "school conflicts."

U.S.C. § 1227(a)(2)(C), based on his 2004 convictions for possession of a firearm.[4]

Nwozuzu applied for citizenship in August 2005 and April 2006, but his application was not approved.

On October 6, 2006, the immigration judge (the "IJ") held that DHS failed to meet its burden to establish alienage and terminated proceedings against Nwozuzu. DHS appealed the decision to the Board of Immigration Appeals (the "BIA"). On September 10, 2008, the BIA issued its decision (the "September 10 decision"), sustaining DHS's appeal and remanding the case to the IJ to complete removal proceedings. *See Matter of Nwozuzu*, 24 I. & N. Dec. 609, 616 (BIA 2008).

In the September 10 decision, the BIA read the phrase "begins to reside permanently" in section 321(a) to require Nwozuzu to have become a lawful permanent resident before turning eighteen to derive citizenship from his naturalized parents. *Id.* at 612. In reaching that conclusion, the BIA considered the definition of the words

_____

[4] On April 16, 2010, DHS lodged an additional charge pursuant to section 237(a)(2)(B)(i) of the INA, 8 U.S.C. § 1227(a)(2)(B)(i), based on his 2004 marijuana conviction.

"residence," "permanent," and "lawfully admitted for permanent residence." *Id.* at 612-13. The BIA also noted that the "residing permanently" language in the INA's definition of "lawfully admitted for permanent residence" in section 101(a)(20) "closely tracks" the language "begins to reside permanently" in section 321(a). *Id.* at 613-14. It therefore concluded that this similarity "strongly suggests that Congress intended to impose a requirement that an alien must obtain lawful permanent residence before the age of 18 to acquire derivative citizenship." *Id.* The BIA also held that failing to read "reside permanently" to require lawful permanent resident status would "effectively negate" the lawful permanent resident requirement of the first clause, rendering it surplusage. *Id.* at 614.

After additional proceedings before the IJ and the BIA, on November 17, 2011, the BIA dismissed Nwozuzu's appeal of the IJ's denial of his request to terminate the proceedings. *In re Nwozuzu*, No. A046 651 723 (BIA Nov. 17, 2011), *aff'g* No. A046 651 723 (Imm. Ct. N.Y.C. June 9, 2011). The BIA relied primarily on the reasoning in its

September 10 decision concluding that Nwozuzu did not derive citizenship from his parents because he did not become a lawful permanent resident before turning eighteen.

The BIA issued a final order of removal on November 17, 2011, and Nwozuzu timely filed this Petition for Review on December 9, 2011.

## DISCUSSION

As a general matter, this Court reviews BIA determinations of law *de novo*. *Iavorski v. U.S. INS*, 232 F.3d 124, 128 (2d Cir. 2000). Agency interpretations of statutes are reviewed under *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). Under the first prong of *Chevron*, this Court determines "whether Congress has directly spoken to the precise question at issue." *Id.* at 842. "If the intent of Congress is clear, that is the end of the matter . . . ." *Id.* If, however, there is ambiguity, the second prong of *Chevron* requires that this Court defer to an agency's interpretation of the statute if that interpretation is reasonable. *Id.* at 843.

We conclude that, both in the text of the statute and its legislative history, Congress has spoken directly to "the precise question at issue." Section 321(a) provided that a child whose parents were naturalized and who "beg[an] to reside permanently in the United States while under the age of eighteen years" could obtain derivative citizenship. 8 U.S.C. § 1432(a)(5) (1994); *see also INS v. Cardoza-Fonseca*, 480 U.S. 421, 446 (1987) ("[W]hether Congress intended the two standards to be identical is a pure question of statutory construction for the courts to decide."). As we discuss below, this was true even for a child who was not lawfully admitted for permanent residence before turning eighteen.

## A. *The Statutory Text*

When interpreting a statutory provision, we begin with the language of the statute. *Saks v. Franklin Covey Co.*, 316 F.3d 337, 345 (2d Cir. 2003) ("Every exercise in statutory construction must begin with the words of the text."). If the statutory terms are unambiguous, we construe the statute according to the plain meaning of its

words.  *See Rubin v. United States,* 449 U.S. 424, 430 (1981); *Greenery Rehab. Grp., Inc. v. Hammon*, 150 F.3d 226, 231 (2d Cir. 1998).  The plain meaning is best discerned by "looking to the statutory scheme as a whole and placing the particular provision within the context of that statute." *Saks*, 316 F.3d at 345.  If, however, the terms are ambiguous or unclear, we may consider legislative history and other tools of statutory interpretation.  *Greenery,* 150 F.3d at 231; *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1073 (2d Cir. 1993).  Applying these general rules of statutory construction, we conclude that Congress intended for the two clauses in section 321(a)(5) to mean different things.

First, the two clauses use different words:

> Such child is residing in the United
> States pursuant to a *lawful
> admission for permanent residence* at
> the time of the naturalization of
> the parent last naturalized . . . or
> thereafter begins to *reside
> permanently* in the United States
> while under the age of eighteen
> years.

8 U.S.C. § 1432(a)(5) (1994) (emphasis added).  This alone is instructive, for "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."  *Cardoza-Fonseca*, 480 U.S. at 432 (quotation and alteration omitted); *see also Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452 (2002).

Second, these phrases have plainly different meanings.  "[L]awfully admitted for permanent residence" is a term of art.  *See* H.R. Rep. No. 82-1365 (1952), *reprinted in* 1952 U.S.C.C.A.N. 1653, 1684; *see also Gooch v. Clark*, 433 F.2d 74, 78-79 (9th Cir. 1970).  As defined by the INA, it means "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed."  8 U.S.C. § 1101(a)(20) (1994).  That phrase -- that term of art -- does not appear in the second clause.  Rather, section 321(a)(5) employs the generic phrase "reside permanently," which is not defined

-12-

by the INA.  *But see id.* § 1101(a)(31) (defining

"permanent" as "a relationship of continuing or lasting

nature, as distinguished from temporary, but a relationship

may be permanent even though it is one that may be

dissolved eventually at the instance either of the United

States or of the individual, in accordance with law").

Our conclusion that these two phrases are not

coextensive is further reinforced by other sections of the

INA, in which the phrases "lawfully admitted for permanent

residence" and "reside permanently" are used in a manner

that suggest their meanings are distinct.  For example,

before it was revised in 2000, section 322 allowed parents

to request a certificate of citizenship for a child if,

among other requirements, "the child [was] *residing

permanently* in the United States with the citizen parent,

pursuant to a *lawful admission for permanent residence*."  8

U.S.C. § 1433(a)(5)(A) (1994) (emphasis added) (amended

2000).  If one could *only* reside permanently in the United

States as a lawful permanent resident, then the phrase

"pursuant to a lawful admission for permanent residence"

-13-

would have been superfluous.  *See Duncan v. Walker*, 533

U.S. 167, 174 (2001) (a statute must be construed "to give

effect, if possible, to every clause and word" (quotation

omitted)).

Similarly, section 327 provides that, in the case

of former citizens who lost their citizenship by fighting

for other countries during World War II, the former citizen

shall not be naturalized unless he "has been *lawfully

admitted* to the United States for *permanent residence* and

intends to *reside permanently* in the United States."  8

U.S.C. § 1438(b)(2) (2012)(emphasis added).  As used in

section 327, "lawfully admitted . . . for permanent

residence" and "reside permanently" are clearly separate

clauses that must carry different meanings.  *See Sosa v.

Alvarez-Machain*, 542 U.S. 692, 711 n.9 (2004) (where

Congress "uses certain language in one part of the statute

and different language in another, the court assumes

different meanings were intended" (internal quotation marks

and citation omitted)).

Third, our precedent has already established that to "reside permanently" in section 321(a) requires something less than a lawful admission of permanent residency. *See Ashton v. Gonzales*, 431 F.3d 95, 99 (2d Cir. 2005).[5] In *Ashton*, the government sought to exclude a petitioner who was not a lawful permanent resident at the time his parent was naturalized. The government argued that "to reside permanently," an alien must be a lawful permanent resident of the United States. *See id.* at 98-99. We, however, rejected the arguments advanced by the government and concluded that, apart from actually being lawfully admitted for permanent residency, "some lesser official objective manifestation" of beginning to reside permanently would satisfy the requirements of section

---

[5] We recognize that the two other circuits to have considered this issue, the Ninth Circuit and the Eleventh Circuit, have held to the contrary. *See United States v. Forey-Quintero*, 626 F.3d 1323, 1326-27 (11th Cir. 2010); *Romero-Ruiz v. Mukasey*, 538 F.3d 1057, 1062-63 (9th Cir. 2008). The court in *Forey-Quintero* relied heavily on the BIA's reasoning in *In re Nwozuzu*, which, as discussed herein, we reject. *See Forey-Quintero*, 626 F.3d at 1327. Moreover, neither court examined the legislative history behind the evolution of the statute, which supports reading the two clauses of section 321(a) distinctly. *See id.; Romero-Ruiz*, 538 F.3d at 1062-63. Hence, we are not persuaded by the reasoning of the Ninth and Eleventh Circuits.

321(a).  *See id.* at 99 (but finding that petitioner's subjective intent alone did not meet that threshold).

Finally, this interpretation of section 321(a) provides meaning to both of its clauses without rendering either superfluous.  The first clause addresses the class of minors who were "lawfully admitted for permanent residence" at the time the second parent was naturalized; they automatically derived citizenship upon the parent's naturalization.  By contrast, the second clause addresses minors who, at the time the second parent was naturalized, either lived abroad or lived in the United States but had not been "lawfully admitted for permanent residence." These minors did not derive citizenship automatically upon the parent's naturalization; rather, they derived citizenship automatically, but only after they resided in the United States *and* garnered some "official objective manifestation" of their intent to reside permanently.  *See id*. at 99 (rejecting notion that subjective intent alone satisfies section 321(a)(5), but suggesting that applying for permanent resident status would meet the requirement).

-16-

Thus, under section 321(a)(5), a minor derived citizenship if the second parent was naturalized and he thereafter "beg[an] to reside permanently in the United States while under the age of eighteen years" -- irrespective of whether he had been lawfully admitted for permanent residence before turning eighteen.

B.   *Legislative History*

To the extent there is any ambiguity in the words of the statute, the legislative history of section 321(a) lends further support to our interpretation, in two respects.  First, the history of the laws governing the derivative naturalization of children demonstrates clearly that Congress intended "lawful admission for permanent residence" and "reside permanently" to mean different things.  Second, the legislative history also makes clear Congress's intent to preserve the family unit and to keep families intact.

1.   *Derivative Citizenship Laws*

The first statute allowing foreign-born children to derive citizenship from their parents' naturalization

was enacted as part of the Naturalization Act of 1790.  *See*

Ch. 3 § 1, 1 Stat. 103, 104.  This provision, amended

slightly by subsequent Naturalization Acts, was eventually

codified as section 2172 of the Revised Statutes of the

United States:

> The children of persons who have
> been duly naturalized under any law
> of the United States, . . . being
> under the age of twenty-one years at
> the time of the naturalization of
> their parents, shall, *if dwelling* in
> the United States, be considered as
> citizens thereof . . . .

Rev. Stat. § 2172 (repealed 1940)(emphasis added), *quoted*

*in United States ex rel. Patton v. Tod*, 297 F. 385, 387 (2d

Cir. 1924); *see also Zartarian v. Billings*, 204 U.S. 170,

173-74 (1907) (noting section 2172 was largely unchanged

since the 1790s).  For more than a century, the derivative

citizenship statute simply required that the foreign child

be "dwelling within the United States," but did not

explicitly require that such "dwelling" be "permanent" or

even "lawful."  Indeed, at the time of its original

enactment, there were no federal immigration laws with

which aliens had to comply.  *See Patton*, 297 F. at 394.

-18-

Based on the plain language of section 2172, it became well-established that a foreign-born child "dwelling within the United States" at the time her parents were naturalized automatically became a citizen. *See id.* at 389-90.

It was also generally presumed that section 2172 granted citizenship to children who were living abroad at the time their parents were naturalized and later began "dwelling in the United States," but the statutory language was ambiguous in this regard. *See id.* at 390-92; Charles Gordon et al., 7 Immigration Law & Procedure § 98.03[3][f] (rev. ed. 2013). It was unclear when these children had to begin "dwelling in the United States" and when they would be deemed citizens. *See Zartarian*, 204 U.S. at 174 (noting that section 2172 raised these questions, but they were not before the Court). To clarify these issues, Congress enacted section 5 of the Citizenship Act of 1907 (the "1907 Act"), which provided:

> [A] child born without the United
> States of alien parents shall be
> deemed a citizen of the United
> States by virtue of the
> naturalization of . . . the parent:
> *Provided*, That such naturalization

-19-

or resumption takes place during the minority of such child; *And provided further*, That the citizenship of such minor child shall begin at the time such minor child begins to reside permanently in the United States.

Ch. 2534 § 5, 34 Stat. 1228, 1229 (repealed 1940); *see also Patton*, 297 F. at 392-93.  Thus, the "reside permanently" requirement was first introduced in section 5 of the 1907 Act; section 2172, until it was repealed in 1940, continued to require merely "dwelling in the United States." Moreover, neither statute used the term "lawful."[6]

---

[6] Several cases from this era construed both Rev. Stat. § 2172 and section 5 of the 1907 Act as requiring that the alien child have "legally landed" in the United States before they could be deemed to be "dwelling" or "resid[ing] permanently" here.  *Kaplan v. Tod*, 267 U.S. 228, 230 (1925); *Zartarian*, 204 U.S. at 175; *United States ex rel. Patton*, 297 F. at 394.  Each of these cases involved a child who was expressly excluded from admission because she was carrying a contagious disease, *see Zartarian*, 204 U.S. at 172-73, was "feeble minded," *Kaplan*, 267 U.S. at 229, or was "an imbecile," *Patton*, 297 F. at 388.  This Court has previously determined that these outdated cases are "unhelpful" in interpreting section 321 of the INA.  *See Ashton*, 431 F.3d at 98-99.  In any event, this case, as in *Ashton*, is distinguishable because Nwozuzu "was admitted legally into the United States . . . and until he was convicted of [his crimes], he did not belong to a class of persons categorically forbidden from immigrating."  *Id.* at 99.  Therefore, we need not consider whether the "reside permanently" clause in section 321 carries an implicit "lawful entry" requirement.

Because of the ambiguity surrounding Rev. Stat. § 2172, courts construed that provision and section 5 of the 1907 Act as addressing two separate situations:

> Under R.S.U.S. Sec. 2172, a foreign-born minor child dwelling in the United States at the time of the naturalization of the parent automatically becomes an American citizen. Under section 5 of the Act of March 2, 1907, a foreign-born child, not in the United States when the parent is naturalized, becomes a citizen only from such time as, while still a minor, it begins to reside permanently in the United States.

*Patton*, 297 F. at 393; *see also* Gordon, *supra*, § 98.03[2] ("Although it dealt with the same subject matter as section 2172 of the Revised Statutes, the 1907 Act used variant terminology and did not mention, modify, or repeal the former statute."). Congress finally combined these two separate provisions into section 314 of the Nationality Act of 1940:

> A child born outside of alien parents, . . . becomes a citizen of the United States upon fulfillment of the following conditions:

-21-

> (a)  The naturalization of both
>      parents; . . .
>
>      . . . and
>
> (e)  Such child is residing in the
>      United States at the time of the
>      naturalization of the parent
>      last naturalized under
>      subsection (a) . . . or
>      thereafter begins to reside
>      permanently in the United States
>      while under the age of eighteen
>      years.

Ch. 876 § 314, 54 Stat. 1137, 1145-46 (repealed 1952).

Because there was no longer any ambiguity making it

necessary to distinguish between children present at the

time of their parents' naturalization and those who arrived

afterwards, Congress could have simply imposed a single

requirement of "permanent residency" beginning while the

child was still a minor.  Instead, it retained the dual

clause framework:  children could either "resid[e] in the

United States" at the time their parents were naturalized,

or they could later "reside permanently" so long as they

began doing so while still a minor.

Congress maintained this dual framework when it

passed section 321 of the Immigration and Nationality Act

of 1952, which added the lawful permanent residency requirement.  *See* INA § 321(a)(5), ch. 477, 66 Stat. 163, 245 (1952) (codified as amended at 8 U.S.C. § 1432(a)(5) (1994)) (repealed 2000).  Importantly, Congress altered only the first clause of section 314(e) of the 1940 Act, changing the bare phrase "residing in the United States" to "residing . . . pursuant to a lawful admission for permanent residence."  *Id.*  Congress did not, however, significantly alter the second clause, letting stand the requirement that an alien child need only "begin[] to reside permanently in the United States" while still a minor.  *See id.*

    According to the House Report accompanying the INA, the term "lawfully admitted for permanent residence" was a new term of art carrying "especial significance because of its application to numerous provisions of the bill."  H.R. Rep. No. 82-1365 (1952), *reprinted in* 1952 U.S.C.C.A.N. 1653, 1684.  Therefore, when Congress used that term -- in both the text of the statute and in the House Report's discussion of section 321 -- only in

-23-

reference to residency at the time of the parents' naturalization and not in reference to residency beginning thereafter, we must presume that it did so deliberately. *See* INA § 321(a)(5); H.R. Rep. No. 82-1365, *reprinted in* 1952 U.S.C.C.A.N. at 1739-40. Given the "especial significance" of that term, we cannot assume Congress intended the phrase "reside permanently" -- which had been carried over, unaltered, from previous statutes since 1907 -- to be shorthand for the new term of art. We reasonably conclude from this history that Congress intended the two clauses, which had always used different terms and functioned separately, to continue to have different meanings. *See Sosa*, 542 U.S. at 711 n.9.

Indeed, there is a logical reason for requiring lawful permanent residence at the time of naturalization but only permanent residence thereafter: derivative citizenship is granted automatically. *See* INA § 321 (entitled "Child Born Outside of United States of Alien Parent; Conditions Under Which Citizenship *Automatically* Acquired" (emphasis added)). Requiring lawful admission

-24-

for permanent residence at the time of the parents' naturalization provided an administratively convenient way of determining which children intended to remain with their parents and thus would become citizens at the time their parents were naturalized.

Imposing such a requirement on minor children either living abroad or residing temporarily in the United States at the time of their parents' naturalization made little sense. Because their parents had already become citizens, children in this situation automatically acquired citizenship once they were residing in the United States and demonstrated their objective intent to remain "permanently." Requiring them to obtain "lawful admission for permanent residence" would have been a meaningless formality because these children did not require lawful permanent resident status. It also would have unnecessarily delayed their entry into the country, making it difficult to "begin to reside permanently in the United States while under the age of eighteen years" and jeopardizing their chances of deriving citizenship from

their parents.  8 U.S.C. § 1432(a)(5) (1994).  Congress

clearly intended a different result:

> Congress enacted the derivative
> citizenship statute to ensure that
> "alien children whose real interests
> were located in America with their
> custodial parent, and not abroad,
> should be automatically
> naturalized."

*Duarte-Ceri v. Holder*, 630 F.3d 83, 89-90 (2d Cir. 2010)

(quoting *Bustamante-Barrera v. Gonzalez*, 447 F.3d 388, 397

(5th Cir. 2006)).  To be sure, obtaining "lawful admission

for permanent residence" remained the most certain way of

proving the objective intent to "reside permanently," *see*

*Ashton*, 431 F.3d at 99, but it was not the only way to

carry this burden.

### 2.  *Preservation of the Family Unit*

Our decision not to read a lawful permanent

resident requirement into the second clause of section

321(a)(5) is consistent with the prevailing purpose of the

INA:

> [The INA] implements the underlying
> intention of our immigration laws
> regarding the preservation of the
> family unit.  An American citizen

> will have the right to bring his
> alien spouse (wife or husband) as a
> nonquota immigrant.  Similarly, he
> will be able to bring his alien
> minor child as a nonquota immigrant.

H.R. Rep. No. 82-1365, *reprinted in* 1952 U.S.C.C.A.N. at 1680.  Clearly, Congress did not intend for the children of U.S. citizens to be strictly bound by all the formal requirements of the immigration laws applicable to adults. *See, e.g., INS v. Errico*, 385 U.S. 214, 220 (1966) (discussing 1957 amendments to the INA and explaining that "Congress felt that, in many circumstances, it was more important to unite families and preserve family ties than it was to enforce strictly" various restrictions in the immigrations laws).  Moreover, this Court in *Duarte-Ceri* has specifically recognized that the derivative citizenship statute

> "implements the underlying intention
> of our immigration laws regarding
> the preservation of the family
> unit."  It is consistent with
> Congress's remedial purposes,
> therefore, to interpret the
> statute's ambiguity with leniency,
> and we should interpret the statute
> here in a manner that will keep
> families intact.

630 F.3d at 89-90 (citations omitted) (quoting H.R. Rep. No. 82-1365, at 24, *reprinted in* 1952 U.S.C.C.A.N. at 1680).

This reasoning applies with equal force here. We recognize that the alien applicant bears the burden of establishing his eligibility for citizenship and, when we interpret naturalization statutes, "doubts should be resolved in favor of the United States and against the claimant." *Berenyi v. Dist. Dir., INS*, 385 U.S. 630, 637 (1967) (quotation marks omitted). Nevertheless, when possible, we should also seek to "preserve[] rather than extinguish[] citizenship," *Duarte-Ceri*, 630 F.3d at 88, and be mindful of the "underlying intention of our immigration laws regarding the preservation of the family unit," H.R. Rep. No. 82-1365 (1952), *reprinted in* 1952 U.S.C.C.A.N. 1653, 1680. Accordingly, while we conclude that the plain language compels our reading of the statute, we would favor this reading in any event because it furthers the intent of Congress to keep families intact where possible.

## C.   *The BIA's Interpretation*

We conclude that the BIA's interpretation of section 321(a) is unreasonable.  First, relying in part on the definitions of "permanent" and "residence," the BIA held that anything less than lawful permanent resident status cannot be "permanent," even if the petitioner "maintains lawful status."  *Nwozuzu,* 24 I. & N. Dec. at 613.  It reasoned that lawful permanent residents are "permanent" because they are guaranteed that status unless they violate the law or abandon that status.  *Id.* at 613 n.4.  In contrast, "[a]n alien residing in this country without authorization . . . may be required to leave at any time."  *Id.*

This reasoning is inconsistent with the text of the statute and ignores the fact that there are a number of groups that are permitted to stay in this country permanently without being lawful permanent residents, including crewman on fishing vessels and nonimmigrant alien students (G-4 visa holders).  *See, e.g., Elkins v. Moreno*, 435 U.S. 647, 666 (1978) ("Congress, while anticipating

-29-

that permanent immigration would normally occur through immigrant channels, was willing to allow nonrestricted nonimmigrant aliens to adopt the United States as their domicile."); H.R. Rep. No. 82-1365, *reprinted in* 1952 U.S.C.C.A.N. 1653, 1696-97 (explaining that alien crewmen on U.S. vessels are "enable[d] to reside permanently in the United States without having been lawfully admitted for permanent residence").

The BIA also considered the similarity between the phrases "begins to reside permanently" and "lawfully admitted for permanent residence," the latter of which is defined in section 101(a)(20) of the INA as "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed."  8 U.S.C. § 1101(a)(20); *see Nwozuzu*, 24 I. & N. Dec. at 613-14.  But as previously discussed, this Court in *Ashton* strongly suggested that the phrase "reside permanently" is not the equivalent of lawful permanent residence.  *See Ashton*, 431 F.3d at 98-99 (declining to

"rule out that some lesser official objective manifestation [other than lawful permanent residency] might also be sufficient" to satisfy section 321(a)'s requirement).

The BIA further held that requiring anything less than lawful permanent resident status in the second clause would "effectively negate the lawful permanent residence requirement of the first clause." *Nwozuzu*, 24 I. & N. Dec. at 614. The BIA reasoned that a petitioner would rarely need to show lawful permanent resident status because he could meet the more relaxed requirement of the second clause. *Id.* We reject this argument for the reasons articulated above.

\*     \*     \*

Thus, section 321(a) provided that, assuming the other requirements were met, a child "under the age of eighteen years" obtained derivative citizenship when his parents were naturalized and the child was "residing in the United States pursuant to a lawful admission for permanent residence" *or* the child "thereafter beg[an] to reside permanently in the United States while under the age of

eighteen years." 8 U.S.C. § 1432(a)(5) (1994). "[B]egins to reside permanently" does not require "lawful permanent resident" status. It does require, however, "some objective official manifestation of the child's permanent residence." *Ashton*, 431 F.3d at 98-99 (suggesting that an application for legal permanent residency would qualify as an objective manifestation).

Here, Nwozuzu satisfied the conditions of section 321(a). He began to reside permanently in the United States, while still under the age of eighteen, after his parents were naturalized. His application of adjustment to lawful permanent resident status on February 6, 1995 -- after his parents naturalized and when he was still seventeen -- is an objective and official manifestation of his intent to reside permanently in the United States.

Additionally, Nwozuzu's particular family circumstances, including the presence and naturalization of Nwozuzu's parents and the eventual naturalization of all of his siblings, although not sufficient on its own to establish an objective manifestation of permanent

residency, further bolster our conclusion. *See Duarte-Ceri*, 630 F.3d at 89-90 (noting the purpose of the statute is to ensure that "alien children whose real interests were located in America with their custodial parent, and not abroad, should be automatically naturalized.") (quotation marks omitted). Accordingly, he has satisfied the requirements for derivative citizenship under section 321(a).

## *CONCLUSION*

For the reasons set forth above, the petition is GRANTED and the case is REMANDED to the BIA for proceedings not inconsistent with this opinion.