**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 21-2820
_____

CRAIG OKEIDA ANDERSON,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A206 755 570)
Immigration Judge: Robert Lewandowski

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 23, 2022

Before: McKEE,* SHWARTZ, and MATEY, *Circuit Judges*

(Opinion filed: January 17, 2025)
_____

OPINION**
_____

PER CURIAM

_____

* Judge McKee assumed senior status on October 21, 2022.
** This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Craig Anderson, proceeding pro se, petitions for review of a Final Administrative Order of Removal ("FARO") and a decision denying his application for withholding of removal. For the reasons that follow, we will deny the petition for review.

Anderson is a 43-year-old native and citizen of Jamaica. He entered the United States as a non-immigrant visitor in 1996 at approximately the age of 15. In 2015, Anderson was convicted of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). He was sentenced to 84 months in prison.

In 2019, the Department of Homeland Security began expedited removal proceedings and issued a FARO. It found Anderson removable for having been convicted of an aggravated felony. See 8 U.S.C. § 1227(a)(2)(A)(iii); see also 8 U.S.C. § 1101(a)(43)(E)(ii) (defining "aggravated felony" to include a § 922(g)(1) offense). DHS rejected Anderson's claim that he was born in the United States and was thus a United States citizen. The Assistant Field Office Director found that Anderson was born in Jamaica and noted that he had not derived citizenship through the naturalization of his father.

Anderson asserted a fear of returning to Jamaica based on his bisexual orientation. An asylum officer concluded that he had established a reasonable possibility of harm and referred his case to an Immigration Judge for "withholding-only" proceedings. See 8 C.F.R. § 208.31(e). Anderson was represented by counsel in these proceedings. The IJ ruled that he was ineligible for withholding of removal and denied his application for deferral of removal under the Convention Against Torture ("CAT"). On August 31,

2

2021, the Board of Immigration Appeals affirmed the IJ's decision without an opinion. Anderson timely petitioned for review.

We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1).[1] Where the BIA affirms the IJ's decision without opinion, we review the IJ's decision. Borrome v. Att'y Gen., 687 F.3d 150, 154 (3d Cir. 2012). Because Anderson was found removable as an aggravated felon, our review is limited to constitutional and legal questions, although we may review factual challenges to a CAT order. Nasrallah v. Barr, 590 U.S. 573, 576 (2020). We review legal determinations de novo and factual findings for substantial evidence. See Herrera-Reyes v. Att'y Gen., 952 F.3d 101, 106 (3d Cir. 2020). Under the substantial evidence standard, we will not disturb a finding of fact unless the record compels a contrary conclusion. See Nasrallah, 590 U.S. at 584.

Anderson challenges the denial of deferral of removal under the CAT.[2] Anderson testified that he is bisexual. He described his past relationships with men and women and stated that people perceived him as homosexual. Anderson fears returning to Jamaica because the country does not accept the LGBT community. He believes he might be

---

[1] Anderson seeks review of the FARO and the denial of deferral of removal. The FARO became final for purposes of judicial review when his application for withholding of removal was decided. See Inestroza-Tosta v. Att'y Gen., 105 F.4th 499, 513 (3d Cir. 2024) (involving reinstated removal order).

[2] To the extent Anderson contends that he is entitled to withholding of removal because he would be persecuted on account of his sexual orientation, the IJ found that he was ineligible for this form of relief. Anderson has not challenged this ruling and we thus do not consider whether he met the standard for such relief.

killed there. He stated that he has no family in Jamaica, that he does not speak the same language as Jamaicans, and that he expects to live on the street.

In ruling that Anderson had not satisfied his burden of proof, the IJ explained that he had not suffered past torture in Jamaica and that he had not identified any specific threat of harm. The IJ noted that, while same-sex sexual conduct is prohibited by Jamaican law, the government only prosecutes cases of sexual assault and child molestation. The IJ recognized that the country reports showed discrimination and some violence against LGBT persons in Jamaica, however the reports did not show that the government was unwilling or unable to protect LGBT persons. The IJ thus found the risk of harm to Anderson "too generalized and hypothetical." IJ Decision at 18. The IJ stated that the risk was "not zero," but that Anderson did not establish a clear probability or likelihood of future torture in Jamaica. Id. at 21.

To obtain relief under the CAT, an applicant must show that it is "more likely than not" that he would be tortured if removed. 8 C.F.R. § 1208.16(c)(2). An IJ must make a factual finding as to what is likely to happen to the applicant if removed and decide whether that amounts to the legal definition of torture. Myrie v. Att'y Gen., 855 F.3d 509, 516 (3d Cir. 2017). The latter determination involves assessing whether public officials will acquiesce to harm by a non-state actor. Id.

The IJ did not explicitly apply the framework in Myrie; however, his decision reflects that he found that Anderson might be harmed, but that Anderson did not show that such harm is likely. Anderson argues that violence against LGBT individuals in

Jamaica is widespread and that the IJ downplayed the criminalization of same-sex sexual conduct. He also contends that the lack of a specific threat does not undermine his claim because he has not been in Jamaica since he was 15 years old.

The record reflects that Jamaican officials do not prosecute consensual same-sex conduct between men. A.R. at 372. While the country reports show incidents of violence against LGBT individuals, the reports do not compel a conclusion that Anderson, in particular, is likely to be harmed. See Bernard v. Sessions, 881 F.3d 1042, 1048 (7th Cir. 2018) (per curiam) (holding general reports of violence against LGBT individuals and Jamaica's criminal laws did not meet burden of proof for CAT relief). To the extent Anderson relies on a 2014 Human Rights Watch Report suggesting a high risk of violence, as the IJ recognized, the report is outdated. The IJ thoughtfully considered the country reports. Substantial evidence supports his decision.[3]

Anderson also contends that his due process rights were violated because he was denied the opportunity to apply for adjustment of status. DHS pursued expedited removal proceedings under § 238 of the Immigration and Nationality Act, 8 U.S.C. § 1228, which precludes discretionary relief. Anderson filed a motion to be placed in removal proceedings under § 240 of the Act, 8 U.S.C. § 1229a, so that he could apply for adjustment of status with a waiver. His father had filed a Form I-130 petition on his

---

[3] To the extent the IJ suggested that relief was not due because Anderson has been able to conceal his bisexuality, Bernard rejected the premise that a claim fails when a person can hide his identity. Bernard, 881 F.3d at 1049. As in that case, the IJ here did not rely solely on this reasoning and any error does not warrant relief.

behalf, which was approved. An IJ denied the request, noting a lack of authority to change the proceedings.[4]

Anderson's due process argument lacks merit. As Anderson's lawyer conceded, § 1228(b)(1) allows the Attorney General to pursue the removal of non-permanent residents for an aggravated felony conviction under either section. See Avila v. Att'y Gen., 826 F.3d 662, 670 (3d Cir. 2016) (recognizing the government's discretion); Flores-Ledezma v. Gonzales, 415 F.3d 375, 381-82 (5th Cir. 2005) (rejecting equal protection challenge to such discretion). More significantly, there was no due process violation because a noncitizen has no protectible liberty interest in being considered for discretionary relief. United States v. Torres, 383 F.3d 92, 104-06 (3d Cir. 2004).

Anderson also argues that he derived citizenship through the naturalization of his father.[5] A child who was born outside of the United States to noncitizen parents can become a citizen upon the naturalization of a parent if certain statutory conditions are met. Morgan v. Att'y Gen., 432 F.3d 226, 230-31 (3d Cir. 2005). The applicable statute here is former 8 U.S.C. § 1432(a).[6] DHS found that Anderson did not derive citizenship

---

[4] Another IJ stated at a later hearing that she believed the Government should have placed Anderson in § 240 proceedings. The Government looked at the issue and, at the next hearing, said that it would not change the proceedings. Anderson's counsel conceded that the Government had a choice, although she believed that the Government should have initiated § 240 proceedings.

[5] We may review legal questions related to nationality claims. Espichan v. Att'y Gen., 945 F.3d 794, 797 (3d Cir. 2019).

[6] Section 1432(a) was replaced by 8 U.S.C. § 1431(a), but the law in effect at the time of the events giving rise to the citizenship claim – the child's birth, entry into the United States, and the parent's naturalization – applies. Morgan, 432 F.3d at 230 & n.1. Here,

because he was not admitted as a lawful permanent resident before his eighteenth birthday.

Anderson argues that lawful permanent resident status is not necessary under the statute, which requires, among other things, that the "child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent . . . , or thereafter begins to reside permanently in the United States while under the age of eighteen years." 8 U.S.C. § 1432(a)(5) (repealed) (emphasis added). Anderson's father's naturalization was in 1994, when Anderson was 12 years old and living in Jamaica. Anderson contends that he satisfies the second clause because he began to reside here permanently while under the age of 18.

Courts of appeals are divided on whether the second clause in § 1432(a)(5) requires lawful permanent resident status. Compare Cheneau v. Garland, 997 F.3d 916, 917-18 (9th Cir. 2021) (en banc) (holding that such status is not required); Nwozuzu v. Holder, 726 F.3d 323, 333 (2d Cir. 2013) (same), with United States v. Forey-Quintero, 626 F.3d 1323, 1326-27 (11th Cir. 2010) (holding that such status is required). While we stated in Morgan, 432 F.3d at 230, that the child must be residing in the United States as a lawful permanent resident, the proper construction of the statute was not before us.

We need not decide this issue here because, even if the second clause does not require lawful permanent resident status, Anderson has not shown that he began to reside

---

these events occurred before 2001, when § 1431(a) became effective.

here permanently while under the age of 18.  See Sharma v. Garland, 67 F.4th 1, 4 (1st Cir. 2023) (holding same).  As Anderson states, courts have required a noncitizen to show an "objective official manifestation of the child's permanent residence."  Cheneau, 997 F.3d at 925 (citation omitted).  The noncitizens in Cheneau and Nwozuzu had applied to adjust their status before they were 18 years old.  Anderson contends that his actual residence in the United States since he was 15 is an objective official manifestation of his permanent residence.  But his long-time residence does not establish that he began to reside permanently while he was under the age of 18.  See Nwozuzu, 726 F.3d at 329 (noting that subjective intent to reside permanently is insufficient).

To the extent Anderson's father's filing of the Form I-130 constitutes an objective official manifestation, Anderson did not know the filing date.  The Form I-130 appears to have been approved in 2002, when Anderson was 21 years old.  A.R. at 529, 534.  In addition, while Anderson states that his father did not receive notice of the approval, he does not state that he or his father took any steps to ascertain the status so that he could apply to adjust his status.  See Sharma, 67 F.4th at 4 (holding intent to reside permanently was not shown where petitioner abandoned the adjustment-of-status process).  Anderson has not shown that he satisfied § 1432(a)(5).  See Bagot v. Ashcroft, 398 F.3d 252, 256 (3d Cir. 2005) (noting applicant's burden of proof of eligibility for citizenship).

Accordingly, we will deny the petition for review.