# United States Court of Appeals
## For the First Circuit

No. 15-1805

PIERRE THOMAS,

Petitioner,

v.

LORETTA E. LYNCH,
ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Kayatta, Barron, and Stahl,
<u>Circuit Judges</u>.

<u>Rhonda F. Gelfman</u>, with whom The Law Offices of Rhonda F. Gelfman, P.A., were on brief, for petitioner.
<u>Linda Y. Cheng</u>, Trial Attorney, Office of Immigration Litigation, Civil Division, with whom <u>Benjamin C. Mizer</u>, Principal Deputy Assistant Attorney General, Civil Division, and <u>Anthony P. Nicastro</u>, Acting Assistant Director, Office of Immigration Litigation, were on brief, for respondent.

July 5, 2016

**BARRON**, **Circuit Judge**.  We must decide in this case whether petitioner Pierre Thomas satisfied the applicable statutory criteria for obtaining derivative citizenship in consequence of his mother's naturalization.  Those criteria were set forth in the derivative citizenship statute that was in effect at the time that Thomas was still a minor.  Thomas concedes that he is removable as an alien who has been convicted of an aggravated felony if he did not satisfy those criteria.  Because we conclude that he did not satisfy them, we deny his petition.

## I.

The following facts are not in dispute. Thomas was born in Haiti and was lawfully admitted to the United States in 1986, at the age of five, as a nonimmigrant visitor.  He was authorized to remain in the United States for six months, but he and his parents remained in the country beyond that date.  After his father died in 1993, Thomas continued to live in the United States with his mother for the remainder of his childhood.

At some point while Thomas was a child, his mother obtained lawful permanent resident status.  On July 31, 1995, when Thomas was fourteen years old, Thomas's mother filed an I-817 Application for Voluntary Departure on Thomas's behalf under the Family Unity Program.[1]  That application was approved on August

---

[1] The Family Unity Program, as authorized by the Immigration Act of 1990, Pub. L. No. 101-649, § 301, 104 Stat. 4978 (Nov. 29,

- 2 -

25, 1995, giving Thomas authorization to remain in the United States for two years.  Then, in 1997, Thomas's mother filed a Form I-130 petition, pursuant to 8 U.S.C. § 1154(a)(1)(B)(i)(I), to classify Thomas as the child of an alien lawfully admitted for permanent residence.  That petition was approved on October 7, 1997.

On May 18, 1999, Thomas's mother became a naturalized United States citizen.  Three days later, Thomas turned eighteen years old.  Thomas did not apply to become a lawful permanent resident during that three-day period that followed his mother's naturalization or at any other point.  Instead, he continued living in the United States without a lawful admission for permanent residence.

In 2003, Thomas was convicted in Massachusetts state court for armed robbery.  Then, in 2012, the United States initiated removal proceedings against Thomas pursuant to section 237(a)(2)(A)(iii) of the INA (8 U.S.C. § 1227(a)(2)(A)(iii)), which provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable."  Thomas contested removal on the ground that he became a United States citizen in 1999, by operation of the derivative citizenship statute

---

1990), "allow[ed] certain spouses and children of [legalized] aliens . . . to work and to remain in the U.S. without fear of deportation."  72 No. 8 Interpreter Releases 283.

then in effect. The Immigration Judge ("IJ") assigned to Thomas's case rejected that contention and, on October 17, 2012, ordered him removed. The Board of Immigration Appeals ("BIA") affirmed that decision on February 25, 2013, and Thomas was removed to Haiti in April of that year.

Thomas's current petition is for review of the denial by the BIA of his motion to reopen the proceedings against him. Thomas made that motion after he was arrested on a charge of illegal reentry upon his return to the United States in April 2015.

Because the motion was filed more than 90 days after the BIA's 2013 removal order, the BIA denied his motion to reopen on timeliness grounds. See 8 U.S.C. § 1229a(c)(7)(C)(i) (providing that, subject to limited exceptions, a "motion to reopen shall be filed within 90 days of the date of entry of a final administrative order of removal"). On appeal, however, the government has expressly disavowed reliance on the time bar in this case and has urged us to reach the merits. We thus deem the government to have waived any timeliness argument and will proceed to the merits of Thomas's citizenship claim. See 8 U.S.C. § 1252(b)(5)(A).

## II.

Thomas's petition hinges on the proper construction of the derivative citizenship law that was in effect before Thomas turned eighteen years old. That law, former section 321(a) of the INA, provided that:

A child born outside of the United States of alien parents . . . becomes a citizen of the United States upon . . .

(2) The naturalization of the surviving parent if one of the parents is deceased;

. . . if

(4) Such naturalization takes place while such child is under the age of eighteen years; and

(5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of . . . the parent naturalized under clause (2) . . . of this subsection, or thereafter begins to reside permanently in the United States while under the age of eighteen years.

8 U.S.C. § 1432(a) (1999), repealed by Child Citizenship Act of 2000, Pub. L. No. 106-395, § 103(a), 114 Stat. 1631, codified at 8 U.S.C. § 1431(a).[2]

Thomas and the government agree that Thomas's mother, as his lone surviving parent, was naturalized while Thomas was under

---

[2] The Child Citizenship Act of 2000 replaced the derivative citizenship statutes then in effect with the following:

A child born outside of the United States automatically becomes a citizen of the United States when all of the following conditions have been fulfilled:

(1) At least one parent of the child is a citizen of the United States, whether by birth or naturalization.

(2) The child is under the age of eighteen years.

(3) The child is residing in the United States in the legal and physical custody of the citizen parent pursuant to a lawful admission for permanent residence.

8 U.S.C. § 1431(a).

eighteen.  The parties further agree that Thomas was not "residing in the United States pursuant to a lawful admission for permanent residence at the time of [his mother's] naturalization."  The only question we must address, therefore, is whether Thomas, upon his mother's naturalization, "thereafter beg[an] to reside permanently in the United States while under the age of eighteen years."

Under the BIA's interpretation of former section 321(a), the answer is that Thomas clearly did not.  The BIA has concluded that "the phrase 'begins to reside permanently in the United States while under the age of eighteen years,' is most reasonably interpreted to mean that an alien must obtain the status of lawful permanent resident while under the age of 18 years." Matter of Nwozuzu, 24 I. & N. Dec. 609, 612 (BIA 2008).  In other words, according to the BIA, the latter clause of paragraph (5) in former subsection 321(a) contains "a shorthand reference to the requirement of the first clause." Id. at 614 n.5.  Thus, as Thomas concedes, Thomas's citizenship claim would fail under the BIA's interpretation because he "was not lawfully admitted for permanent residence prior to his 18th birthday" and thus never satisfied either clause.

Thomas argues that we should reject the BIA's interpretation of that section.  He contends that we should join the Second Circuit in concluding that the BIA's interpretation, under which the second clause of former paragraph 321(a)(5) is

merely a shorthand reference to the first clause, is contrary to the plain language of the statute because the phrase "reside permanently" in the second clause unambiguously means something broader than "resid[e] . . . pursuant to a lawful admission for permanent residence" in the first clause.  See Nwozuzu v. Holder, 726 F.3d 323, 327 (2d Cir. 2013); but see United States v. Forey-Quintero, 626 F.3d 1323, 1326-27 (11th Cir. 2010) (adopting the BIA's interpretation).[3]

Thomas further contends that he satisfied the requirements of that broader, second clause because he satisfied the criteria for "residing permanently" that the Second Circuit set forth in Nwozuzu.  According to Nwozuzu, "'[b]egins to reside permanently' does not require 'lawful permanent resident' status" but merely requires "some objective official manifestation of the child's permanent residence."  726 F.3d at 333.

In the end, as we will explain, Thomas cannot satisfy the statutory criteria even under his preferred, broader reading of "reside permanently."[4]  And that is because he offers no

_____

[3] The Ninth Circuit, construing the language of the clause prior to the BIA's decision in Matter of Nwozuzu, concluded that "in order to obtain the benefits of derivative citizenship, a petitioner must not only establish permanent residence, but also demonstrate that he was residing in some lawful status." Romero-Ruiz v. Mukasey, 538 F.3d 1057, 1062 (9th Cir. 2008).

[4] For this reason, we need not decide whether the BIA's construction of former section 321(a) is entitled to Chevron deference.  Compare Nwozuzu, 726 F.3d at 326-27 (applying Chevron in assessing the BIA's construction of former section 321(a)),

explanation of how he can be said -- in light of the words "thereafter begins" in the key clause -- to have done what he needed to do by the time he needed to do it. But before explaining our conclusion in that regard, we first pause to explain the difficulty in construing the two words that are the focus of the dispute between Thomas and the BIA.

### III.

If one knew nothing else, it would not be altogether surprising if the phrase "reside permanently" was, as the BIA contends, just a shorthand for "resid[e] . . . pursuant to a lawful admission for permanent residence." Those two words appear right after the longer phrase, in the same section, and one certainly might use those words colloquially as a shorthand description of what came before.

But there are some contrary indications that point towards Thomas's preferred reading. The phrase "reside permanently" is not defined in the INA, but the phrase "lawfully admitted for permanent residence" is. And the definition of that

---

with Minasyan v. Gonzales, 401 F.3d 1069, 1074 (9th Cir. 2005) ("Because the INA explicitly places the determination of nationality claims solely in the hands of the courts . . . , we are not required to give Chevron deference to the agency's interpretation of the citizenship laws." (internal quotation marks omitted)). We will assume, favorably to Thomas, that we owe the BIA no deference.

longer phrase includes "residing permanently" as a component part, thus suggesting they are not synonyms.[5]

Similarly, the terms "permanent" and "residence" are separately defined in the INA, each without reference to lawful admission.  "Permanent" is defined in the INA as "a relationship of continuing or lasting nature, as distinguished from temporary, but a relationship may be permanent even though it is one that may be dissolved eventually at the instance either of the United States or of the individual, in accordance with law."  8 U.S.C. § 1101(a)(31).  "Residence" is defined in the INA as "the place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent."  Id. § 1101(a)(33).  Thus, the INA's separate definitions of "residence" and "permanent" together arguably yield a definition for "reside permanently" -- "to have as a principal, actual dwelling place for a continuing or lasting period" -- that makes no reference to lawful admission for permanent residence.

Moreover, if one looks elsewhere in the United States Code, Congress has sometimes distinguished between "an alien lawfully admitted for permanent residence" and one who is

_____

[5] "The term 'lawfully admitted for permanent residence' means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed."  8 U.S.C. § 1101(a)(20).

- 9 -

"otherwise permanently residing in the United States under color of law."  See, e.g., 42 U.S.C. § 1382c(a)(1)(B)(i) (specifying that benefits under Title XVI of the Social Security Act may only be paid to an "aged, blind, or disabled" individual who "is a resident of the United States, and is either (I) a citizen or (II) an alien lawfully admitted for permanent residence or otherwise permanently residing in the United States under color of law"); id. § 602(a)(33) (replaced in 1997) ("A State plan for aid and services to needy families with children must . . . provide that in order for any individual to be considered a dependent child, . . . such individual must be either (A) a citizen, or (B) an alien lawfully admitted for permanent residence or otherwise permanently residing in the United States under color of law"). Thus, for this reason, there are signs that "residing permanently" might not be just a shorthand.

On the other hand, if "reside permanently" is read as something broader than a shorthand reference to "resid[e] . . . pursuant to a lawful admission for permanent residence," the requirements for becoming a citizen at the time of the relevant naturalization would be stricter than the requirements for becoming a citizen after that naturalization.  But it is not at all clear why Congress would have intended that result.  Indeed, under the parallel section of the predecessor statute, the 1940 Nationality Act ("1940 Act"), the requirements for acquiring

- 10 -

derivative citizenship at the time of the relevant naturalization apparently were <u>less</u> strict than were the requirements for becoming a citizen "thereafter."[6]

Similarly, a consideration of the adjacent section of the INA, former section 320, also points against the broader reading of "reside permanently" because of the strange disjuncture that would otherwise arise. Former section 320 addressed how aliens who were born abroad to one alien parent and one citizen parent -- as opposed to aliens born abroad to two alien parents, which former section 321 addressed -- could acquire derivative citizenship.

Under the plain language of former section 320, aliens born abroad to one alien parent and one citizen parent could not acquire derivative citizenship without obtaining a lawful admission for permanent residence.[7] It is therefore hard to see

_____

[6] Under that statute, an alien would acquire derivative citizenship simply by "residing in the United States" at the time of the relevant naturalization, but, thereafter, needed to "begin[] to reside permanently in the United States" (while under the age of eighteen years). 76 Cong. Ch. 876 § 314(e), 54 Stat. 1137, 1145-46 (repealed 1952).

[7] Former section 320 provided that an alien child born abroad to one citizen parent and one alien parent

shall, if such alien parent is naturalized, become a citizen of the United States, when . . .

(1) such naturalization takes place while such child is under the age of eighteen years; and

- 11 -

why Congress would have intended for aliens born abroad to two alien parents to be able to acquire derivative citizenship without obtaining such an admission.  And yet, under Thomas's reading of "reside permanently" in former section 321, one would have to conclude that Congress did intend for that to be the case.[8]

---

> (2) such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of naturalization or thereafter and begins to reside permanently in the United States while under the age of eighteen years.

8 U.S.C. § 1431 (1994).


[8] Even if "reside permanently" is not a shorthand, there may be reason to doubt whether an alien can "reside permanently" in the United States if he is here unlawfully (as Thomas was at the relevant time) without at least some authorization from the government to remain (which Thomas did not have).  Thomas has provided no authority for the proposition that an alien who is present in the United States unlawfully and without such authorization can nonetheless be "residing permanently" herein, and we have found none.  Cf. Holley v. Lavine, 553 F.2d 845, 849 (2d Cir. 1977) (determining that an alien who resided in the United States illegally but possessed an official letter from the INS stating that the agency did not contemplate enforcing her departure at that time, was "permanently residing in the United States under color of law" within the meaning of a regulation implementing the Social Security Act); Sudomir v. McMahon, 767 F.2d 1456, 1462 (9th Cir. 1985) (citation and internal quotation marks omitted) (upholding as "permissible" the following administrative interpretation of a statute referring to aliens "permanently residing under color of law": "A residence may be 'permanent' where the INS has permitted an alien to stay in the United States so long as he is in a particular condition, even though circumstances may change, and the alien may later lose his right to stay.").  But given that Congress has written statutes that include a requirement that an alien be "permanently residing in the United States under color of law," see, e.g., 42 U.S.C. § 1382c(a)(1)(B)(i)(II), it is possible that the words "reside permanently" do not themselves impose an "under color of law" requirement.

Nevertheless, we need not definitively resolve this dispute over the correct construction of "reside permanently" in former section 321(a)(5). No matter how those words are best construed, we still must account for the words "thereafter begins" in that subsection. And, as we next explain, Thomas's contention clearly unravels in consequence of those words.

**IV.**

Because Thomas concedes that he was not residing in the United States pursuant to a lawful admission for permanent residence at the time of his mother's naturalization, he can only prevail if he "thereafter beg[an] to reside permanently in the United States while under the age of eighteen years." 8 U.S.C. § 1432(a)(5) (1999). But Thomas cannot show that he did so.

The record reveals that Thomas took no official action with respect to his citizenship status in the three-day window between his mother's naturalization and his eighteenth birthday. Thomas never applied for lawful permanent resident status,[9] and the filings of both the I-130 and the I-817 were made prior to his mother's naturalization. Moreover, the objective factors that

---

[9] We note that the record shows that Thomas's mother had numerous interactions with the immigration authorities and, in fact, became a lawful permanent resident herself. And Thomas has made no argument that he was in any way precluded from applying for lawful permanent resident status or that he did not know how to do so.

might lead one to think he resided permanently in the United States -- such as his years of residence and the presence of family members in the country -- were all present before she was naturalized (and "at the time of the naturalization").

Thus, even if we assume that Thomas "reside[d] permanently" in the United States during the time period to which the statute directs our attention, he "beg[an]" to do so before his mother was naturalized and then never experienced any relevant change in status or took any relevant action between the time of her naturalization and his eighteenth birthday.  Accordingly, it is hard to see how, following his mother's naturalization, he can be said to have "thereafter beg[un] to reside permanently."

Nor can we simply read "thereafter begins to reside permanently" to mean "thereafter . . . reside[s] permanently." Doing so would require us not only to ignore the word "begins" but also to drop the word "to" and change "reside" to "resides," and we are not in the business of rewriting statutes.

In addition to this obvious textual problem, such a reading runs counter to even the Second Circuit's description of the function of the second clause.  The Nwozuzu Court explained that the purpose of that second clause is to "address[] minors who, at the time the [relevant] parent was naturalized, either lived abroad or lived in the United States but had not been 'lawfully admitted for permanent residence'" and who therefore

- 14 -

"did not derive citizenship automatically upon the parent's naturalization." Nwozuzu, 726 F.3d at 329. But reading "begins" out of the statute, while construing "reside permanently" as Thomas asks us to, would lead to the conclusion that Thomas became a citizen (essentially) automatically upon the naturalization of his mother rather than upon some triggering event that occurred "[]after" her naturalization.

Relatedly, reading "begins" out of the statute seems to render the first clause of the paragraph superfluous if "reside permanently" is not a shorthand, as it is hard to see how one who is "residing . . . pursuant to a lawful admission for permanent residence" is not also necessarily one who is "resid[ing] permanently." Cf. Romero-Ruiz v. Mukasey, 538 F.3d 1057, 1062 (9th Cir. 2008); Matter of Nwozuzu, 24 I. & N. Dec. at 614.[10]

---

[10] To the extent one might think "begins" was simply a meaningless redundancy in former section 321, that notion is belied somewhat by the parallel section of the 1940 Act, which contained the same basic structure as former section 321. As we have set out above, that section, section 314(e) of the 1940 Act, provided that a minor alien whose parent(s) naturalized would acquire derivative citizenship if: "[he] is residing in the United States at the time of the naturalization . . . or thereafter begins to reside permanently in the United States while under the age of eighteen years." 76 Cong. Ch. 876 § 314(e), 54 Stat. 1137, 1145-46 (repealed 1952). Under that statutory language, no alien would be in a position like Thomas is now, having arguably "beg[un]" to reside permanently prior to the naturalization of his parent(s), and lived in the United States continuously thereafter, but having failed to acquire derivative citizenship under the first clause of the section. Thus, there would have been no reason to read the word "begins" out of section 314(e) of the 1940 Act, because that word would not have barred from citizenship any alien who

Thomas makes no attempt to address the problems that the words "thereafter begins" pose for his attempt to fit the facts of his case into the statute. It is true that giving force to those words could advantage aliens who start residing permanently in the United States later over those who do so earlier. But that arguably anomalous consequence arises only on a broad construction of "reside permanently." If that phrase is instead construed as a shorthand for "resid[e] . . . pursuant to a lawful admission for permanent residence," then the statute provided no incentive for aliens to delay the onset of their permanent residence.

In light of the problems with reading "begins" out of former section 321(a)(5), and because the only argument we have identified against giving force to "thereafter begins" seems to support the proposition that "reside permanently" was a shorthand, we conclude that Thomas did not satisfy the terms of the statute. Accordingly, his claim to derivative citizenship fails.[11]

## V.

For the reasons set forth above, we **deny** Thomas's petition for review.

---

"reside[d] permanently" "[]after" the relevant naturalization while under the age of eighteen years.

[11] Because we deny Thomas's petition on the merits, we do not address the government's argument that Thomas is collaterally estopped from claiming citizenship as a result of his November 2015 guilty plea to a charge of illegal reentry by a removed alien (a plea that Thomas contends has since been withdrawn).