**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

MONSSEF CHENEAU,
*Petitioner*,

v.

WILLIAM P. BARR, Attorney General,
*Respondent.*

No. 15-70636

Agency No.
A077-279-939

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted July 6, 2020
Portland, Oregon

Filed August 19, 2020

Before: Mark J. Bennett and Eric D. Miller, Circuit Judges,
and Benita Y. Pearson,* District Judge.

Per Curiam Opinion;
Concurrence by Judge Bennett

---

*The Honorable Benita Y. Pearson, United States District Judge for the Northern District of Ohio, sitting by designation.

# SUMMARY[**]

## Immigration

Denying in part and granting in part Monssef Cheneau's petition for review of a decision of the Board of Immigration Appeals, and remanding, the panel concluded that Cheneau was not a derivative citizen of the United States, and that his burglary conviction, under California Penal Code § 459, was not a crime-of-violence aggravated felony that rendered him removable.

As an initial matter, the panel considered which version of the derivative citizenship statute applied: former 8 U.S.C. § 1432(a), which was in effect until February 27, 2001, or the current statute at 8 U.S.C. § 1431(a).  Observing that § 1432(a) governed if Cheneau became a citizen before February 27, 2001, the panel concluded that § 1432(a) did not apply because it was not in effect at the time of a critical event giving rise to Cheneau's eligibility.

Under § 1432(a)(5), a child can obtain derivative citizenship in two ways: first, if at the time his parent is naturalized, he "is residing in the United States pursuant to a lawful admission for permanent residence," or second, if after his parent is naturalized and while under eighteen, he "begins to reside permanently in the United States." Cheneau did not obtain lawful permanent resident status until August 2003, at age eighteen, about four years after his mother was naturalized and when § 1432(a) was no longer

---

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

in effect.  Thus, the panel concluded that the first provision of § 1432(a)(5) did not apply.  Considering the second provision of § 1432(a)(5), the panel rejected as foreclosed by *Romero-Ruiz v. Mukasey*, 538 F.3d 1057 (9th Cir. 2008), Cheneau's argument that he began to "reside permanently in the United States" in January 2000, when he applied for adjustment of status to lawful permanent resident.  The panel explained that under *Romero-Ruiz* "lawful admission for permanent residence" is required by both provisions of clause (5).  Thus, because the critical event of Cheneau obtaining lawful permanent resident status happened in 2003, more than two years after § 1432(a) was repealed, the panel concluded that § 1432(a) was not applicable, and that § 1431(a) applied.

Under § 1431(a), a child born outside of the United States automatically becomes a citizen of the United States when all of the following conditions have been fulfilled: (1) At least one parent of the child is a citizen of the United States, whether by birth or naturalization; (2) The child is under the age of eighteen years; and (3) The child is residing in the United States in the legal and physical custody of the citizen parent pursuant to a lawful admission for permanent residence.  Observing that Cheneau conceded that he never resided in the United States pursuant to a lawful admission for permanent residence while he was under the age of eighteen, the panel concluded that he did not become a citizen of the United States pursuant to § 1431(a), and that he was therefore subject to removal proceedings.

The panel agreed with the government that the Supreme Court's intervening decision in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), negated the aggravated felony crime of violence ground for Cheneau's removal based on his § 459 burglary conviction.  The panel observed that Cheneau's

conviction for receipt of stolen property, under California Penal Code § 496(a), appeared to be a categorical aggravated felony under *United States v. Flores*, 901 F.3d 1150 (9th Cir. 2018), but noted that the Board did not determine this question and that the government sought a remand on this issue.  Accordingly, the panel remanded for the Board to consider whether any of Cheneau's criminal convictions rendered him removable.

Concurring, Judge Bennett, joined by Judge Miller and District Judge Pearson,  agreed that *Romero-Ruiz* foreclosed Cheneau's derivative citizenship claim, but wrote separately because he believes that *Romero-Ruiz* was phrased too broadly and established a rule that, although understandable in the circumstances presented in that case, leads to an incorrect result when applied in this case.

## COUNSEL

Kari E. Hong (argued), Boston College Law School, Newton, Massachusetts, for Petitioner.

Craig A. Newell, Jr. (argued), Trial Attorney; Emily Anne Radford, Assistant Director; Joseph H. Hunt, Assistant Attorney General; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

PER CURIAM:

Monssef Cheneau petitions for review of the Board of Immigration Appeals' ("BIA") determinations that he does not qualify for derivative citizenship and that his burglary conviction renders him removable.  We conclude that Cheneau is not a derivative citizen of the United States.  The Immigration Judge ("IJ") and the BIA found that Cheneau was removable because his California burglary conviction was a crime-of-violence aggravated felony.  While this appeal was pending, the Supreme Court held that the "crime of violence" statute, as incorporated into the Immigration and Nationality Act's ("INA") definition of aggravated felony, is unconstitutionally vague.  *See Sessions v. Dimaya*, 138 S. Ct. 1204, 1223 (2018).  Therefore, Cheneau's burglary conviction can no longer support removal as a crime-of-violence aggravated felony.  We remand to the BIA to determine whether Cheneau is removable on another ground, including based on his California conviction for receipt of stolen property.

**I.**

Cheneau was born in December 1984 and is a native of Morocco and a citizen of France.  His parents divorced in 1990, and his mother obtained full custody of him.  When Cheneau was thirteen, he lawfully entered the United States on a non-immigrant student visa.  In July 1999, Cheneau's mother was naturalized as a United States citizen.

In January 2000, when Cheneau was fifteen, his mother filed an I-130 Petition for Alien Relative on his behalf, and Cheneau simultaneously applied for adjustment to lawful permanent resident status based on his mother's pending

petition.   The Immigration and Naturalization Service
("INS") scheduled Cheneau for an adjustment of status
interview but mistakenly mailed the notice of the interview
to Cheneau's old address.   Cheneau and his mother never
received the notice.   As a result, Cheneau failed to appear for
the interview, and the INS denied his application for
adjustment of status because he did not appear.

In January 2003, Cheneau's mother filed a pro se motion
to reopen, writing: "We never received a notice for his
interview.   We moved from the previous address . . . .   We
sent our notice for address change[] and we sent a lot of
inquiry forms for this file.   Unfortunately we never received
an answer.   We just [found] out about the problem."   The
INS granted the request for reopening and adjusted
Cheneau's status to lawful permanent resident in August
2003, when Cheneau was eighteen.

In 2006, Cheneau was convicted of three offenses:
(i) burglary in violation of California Penal Code § 459,
(ii) receipt of stolen property in violation of California Penal
Code § 496(a), and (iii) unlawful taking of a vehicle under
California Vehicle Code § 10851(a).   Cheneau was again
convicted of burglary in August 2009.   Following his
convictions, the Department of Homeland Security initiated
removal proceedings against Cheneau, alleging that he was
subject to removal on the grounds that he had been convicted
of aggravated felonies and crimes involving moral turpitude.
*See* 8 U.S.C. § 1227(a)(2)(A).

Before the IJ, Cheneau argued that his removal
proceedings should be terminated because he was a citizen
of the United States, having derived citizenship from his
mother's naturalization.   The IJ rejected Cheneau's
derivative citizenship claim on the basis that "he did not
attain lawful permanent residence in this country prior to the

age of 18." The IJ also determined that two of Cheneau's convictions were for deportable aggravated felonies: burglary, a crime of violence, and receipt of stolen property, a theft offense. *See* 8 U.S.C. § 1101(a)(43)(F), (G). The IJ expressly made "no findings" as to whether Cheneau had been convicted of a crime involving moral turpitude.

The BIA affirmed. The BIA first held that under former 8 U.S.C. § 1432(a) (1994), Cheneau had not derived citizenship from his mother's naturalization because he did not become a lawful permanent resident before turning eighteen. Further, the BIA affirmed the IJ's determination that Cheneau was removable on the ground that his burglary conviction qualified as a crime-of-violence aggravated felony under 8 U.S.C. § 1101(a)(43)(F). The BIA did not address the IJ's other finding regarding Cheneau's conviction for receipt of stolen property. Cheneau petitioned our court for review. We granted the government's unopposed motion to remand, so that the BIA could "further address" whether Cheneau's burglary conviction was a crime of violence and determine the "applicable statutory provision" for Cheneau's claim of derivative citizenship.

On remand, the BIA again determined that Cheneau's burglary conviction was a crime of violence, finding that the Supreme Court's decision in *Descamps v. United States*, 570 U.S. 254 (2013), did not change the analysis. The BIA also determined that the applicable derivative citizenship statutory provision was 8 U.S.C. § 1431(a) and not former 8 U.S.C. § 1432(a)[1]—which it had applied the first time. The BIA then concluded that Cheneau was not a derivative

---

[1] Former 8 U.S.C. § 1432(a) was repealed in 2000. We use "8 U.S.C. § 1432(a)" or "§ 1432(a)" to refer to this former version.

citizen under § 1431(a) and was therefore subject to removal.

## II.

We have jurisdiction to determine Cheneau's claim that he is a derivative citizen of the United States and therefore not subject to removal. *Minasyan v. Gonzales*, 401 F.3d 1069, 1074 (9th Cir. 2005) (citing 8 U.S.C. § 1252(b)(5)(A)). We review the legal questions de novo and "are not required to give *Chevron* deference to the agency's interpretation of the citizenship laws."[2] *Id.*

The INA confers automatic "derivative citizenship on the children of a naturalized citizen, provided certain statutorily prescribed conditions are met." *Id.* at 1075. Cheneau claims that he derived citizenship from his mother's naturalization. This claim is foreclosed by our decision in *Romero-Ruiz v. Mukasey*, 538 F.3d 1057 (9th Cir. 2008).

We must first decide which version of the statute governs. The applicable version is the one that was "in effect at [the] time the critical events giving rise to eligibility occurred." *Minasyan*, 401 F.3d at 1075. Former § 1432(a) was in effect until February 27, 2001, when § 1431(a) took effect. *See Hughes v. Ashcroft*, 255 F.3d 752, 758–59 (9th Cir. 2001). Simplified, § 1432(a) governs if Cheneau became a citizen before February 27, 2001. If Cheneau did

---

[2] We note that there is a circuit split over whether *Chevron* deference is appropriate. The Second Circuit, for example, applied *Chevron* when reviewing the BIA's interpretation of § 1432(a), but concluded the BIA's interpretation was unreasonable. *Nwozuzu v. Holder*, 726 F.3d 323, 326–27, 333 (2d Cir. 2013).

not become a citizen before that date, then the successor (and current) statute, § 1431(a), controls.

Cheneau urges the application of 8 U.S.C. § 1432(a), which provided in relevant part:

> (a) A child born outside of the United States of alien parents, or of an alien parent and a citizen parent who has subsequently lost citizenship of the United States, becomes a citizen of the United States upon fulfillment of the following conditions:
>
> . . .
>
> (5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent . . . , or thereafter begins to reside permanently in the United States while under the age of eighteen years.

We conclude that § 1432(a) does not apply because it was not in effect at the time of a critical event giving rise to eligibility. Under clause (5), a child can obtain derivative citizenship in two ways: first, if at the time his parent is naturalized, he "is residing in the United States pursuant to a lawful admission for permanent residence," or second, if after his parent is naturalized and while under eighteen, he "begins to reside permanently in the United States." *Id.* Cheneau did not obtain lawful permanent resident status[3]

---

[3] We use interchangeably the terms "lawful admission for permanent residence" and obtaining status as a "lawful permanent resident."

until August 2003, at age eighteen, about four years after his mother was naturalized and when § 1432(a) was no longer in effect. Thus, the first provision of § 1432(a)(5) does not help Cheneau.

Cheneau does not dispute this but argues instead that he became a derivative citizen under the second provision of § 1432(a)(5). Cheneau contends that even though he did not obtain lawful permanent resident status before his mother was naturalized, he nonetheless began to "reside permanently in the United States" after she was naturalized, and "while [he was] under the age of eighteen." According to Cheneau, he began to "reside permanently in the United States" in January 2000, when he applied for adjustment of status to lawful permanent resident. Under Cheneau's interpretation of the second provision, the critical event occurred before § 1432(a) was repealed. In support, Cheneau relies on the Second Circuit's decision in *Nwozuzu v. Holder*, 726 F.3d 323 (2d Cir. 2013), which held: "'[B]egins to reside permanently' does not require 'lawful permanent resident' status. It does require, however, 'some objective official manifestation of the child's permanent residence.'" *Id.* at 333 (alterations in original) (citation omitted). In Cheneau's view, his application for adjustment to lawful permanent resident status when he was fifteen—in combination with his actual residence in the United States— is sufficient as an "objective official manifestation of [his] permanent residence." *Id.* Cheneau thus contends the undisputed facts demonstrate that he became a citizen when § 1432(a) was still in effect.

We are foreclosed from following *Nwozuzu*.**[4]**  In *Romero-Ruiz*, we considered a petitioner's derivative citizenship claim under § 1432(a)(5).  538 F.3d at 1062. Like Cheneau, Romero-Ruiz argued that although he had not been lawfully admitted for permanent residence at the time of his mother's naturalization, he qualified for derivative citizenship under the second provision's "begins to reside permanently" requirement.  *Id.*  We rejected Romero-Ruiz's argument, concluding: "A plain reading of the statute evidences the requirement that the child be residing pursuant to lawful admission either at the time of the parent's naturalization or at some subsequent time while under the age of 18.  The phrase 'or thereafter begins to reside permanently' alters only the *timing* of the residence requirement, not the requirement of *legal* residence."  *Id.*

We are bound by *Romero-Ruiz*, under which "lawful admission for permanent residence" is required by *both* provisions of clause (5).  *See Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc) (instructing that absent superseding Supreme Court authority, "a three-judge panel may not overrule a prior decision of the court"); *Tippett v. Coleman (In re Tippett)*, 542 F.3d 684, 691 (9th Cir. 2008) ("[W]here a panel confronts an issue germane to the eventual resolution of the case, . . . that ruling becomes the law of the circuit, regardless of whether doing so is necessary in some strict logical sense." (citation omitted)).

We acknowledge that certain language in *Romero-Ruiz* can be read as indicating that the second provision requires "some lawful status" but not necessarily lawful permanent

---

**[4]** Indeed, the Second Circuit expressly disagreed with our court when it held that the second provision does not require "lawful admission for permanent residence."  *Nwozuzu*, 726 F.3d at 328 n.5.

resident status. But we think this view requires a strained reading of *Romero-Ruiz*, especially considering the first sentence of the opinion: "This petition for review presents the question of whether an immigrant who did not have lawful permanent resident status at the time of his mother's naturalization is eligible for derivative citizenship. We conclude that he is not, and deny the petition." 538 F.3d at 1060; *see also id.* at 1062. In addition, *Romero-Ruiz*'s surplusage analysis makes sense only if "reside permanently" requires lawful permanent resident status: "To interpret the second clause as conferring derivative citizenship on children who otherwise meet the requirements as long as they are permanently living in the United States would render the first clause—requiring legal permanent residence—superfluous." *Id.* The Second, Fifth, and Eleventh Circuits have all read *Romero-Ruiz* like we do here, as requiring "lawful admission for permanent residence" under both provisions. *See Nwozuzu*, 726 F.3d at 328 n.5; *Gonzalez v. Holder*, 771 F.3d 238, 240–41 (5th Cir. 2014); *United States v. Forey-Quintero*, 626 F.3d 1323, 1326–27 (11th Cir. 2010) (agreeing with *Romero-Ruiz*'s holding). We are, of course, not bound by other circuits' views of our opinions. But the fact that three of them read *Romero-Ruiz* as we do indicates that our reading is correct.

Under *Romero-Ruiz*, the critical event of Cheneau obtaining lawful permanent resident status happened in 2003, more than two years after § 1432(a) was repealed, and that section is therefore not applicable.

We apply instead 8 U.S.C. § 1431(a), which states:

> A child born outside of the United States automatically becomes a citizen of the United States when all of the following conditions have been fulfilled:

(1) At least one parent of the child is a citizen of the United States, whether by birth or naturalization.

(2) The child is under the age of eighteen years.

(3) The child is residing in the United States in the legal and physical custody of the citizen parent pursuant to a lawful admission for permanent residence.

Cheneau concedes that he never resided in the United States pursuant to a lawful admission for permanent residence while he was under the age of eighteen. Therefore, Cheneau did not become a citizen of the United States pursuant to § 1431(a).

## III.

As Cheneau is not a citizen of the United States, he is subject to removal proceedings. The BIA found that Cheneau was removable because his burglary conviction was a crime-of-violence aggravated felony. The government concedes on appeal that the Supreme Court's intervening decision in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), "negates this ground for Cheneau's removal." We agree. Although Cheneau's conviction for receipt of stolen property appears to be a categorical aggravated felony under *United States v. Flores*, 901 F.3d 1150 (9th Cir. 2018), the BIA did not determine this question and the government seeks a remand on this issue. We accordingly remand to the BIA to consider whether any of Cheneau's criminal convictions render him removable.

Petition **DENIED** in part and **GRANTED** in part; **REMANDED**.

The parties are to bear their own costs.

---

BENNETT, Circuit Judge, with whom Judge Miller and Judge Pearson join, concurring:

Our decision in *Romero-Ruiz v. Mukasey*, 538 F.3d 1057 (9th Cir. 2008), forecloses Cheneau's derivative citizenship claim, so I concur in our per curiam opinion. I write separately because I believe that *Romero-Ruiz* was phrased too broadly and established a rule that, although understandable in the circumstances presented in that case, leads to an incorrect result when applied here.[1]

Cheneau's derivative citizenship claim turns on the interpretation of a now-repealed section of the Immigration Nationality Act ("INA")—8 U.S.C. § 1432(a) (1994).[2] Though § 1432(a) was repealed effective February 2001, it would nonetheless be applicable to Cheneau's derivative citizenship claim if it were "in effect at [the] time the critical events giving rise to eligibility occurred." *Minasyan v. Gonzales*, 401 F.3d 1069, 1075 (9th Cir. 2005). In my view, § 1432(a) applies here, and Cheneau became a United States

---

[1] Romero-Ruiz had no lawful status in the United States, so the court in that case had no occasion to consider a situation like Cheneau's. Had Cheneau's situation been before the panel in *Romero-Ruiz,* the holding might have been different.

[2] For ease of reference, all citations to "8 U.S.C. § 1432(a)" or "§ 1432(a)" refer to this former section.

citizen in January 2000 when he applied for adjustment to lawful permanent resident status.

Clause (5) of § 1432(a) sets forth certain conditions for children, born outside of the United States of alien parents, to derive citizenship through the naturalization of a parent with legal custody:

> Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent [provision one]. . . *or* thereafter begins to reside permanently in the United States while under the age of eighteen years [provision two].

8 U.S.C. § 1432(a)(5) (emphasis added).  The word "or" indicates that children have two different pathways to derivative citizenship: (1) by residing in the United States pursuant to a "lawful admission for permanent residence" when their parent was naturalized, or (2) by beginning to "reside permanently" in the United States while under age eighteen and after their parent's naturalization.

Cheneau has been residing in the United States since he lawfully entered at age thirteen.  When he was fourteen, Cheneau's mother, who had full legal custody of him, became a naturalized citizen.  When he was fifteen, Cheneau applied for adjustment of status to lawful permanent resident.  But due to a mistake by the Immigration and Naturalization Service ("INS"), Cheneau did not obtain lawful permanent resident status until more than three years later—after he had turned eighteen.

Cheneau does not qualify for derivative citizenship under the first provision of clause (5): he was not lawfully

admitted for permanent residence at the time of his mother's naturalization.  Cheneau contends that he is a derivative citizen under the second provision because he began to "reside permanently" in the United States after his mother's naturalization and before he turned eighteen.  Cheneau acknowledges that he did not obtain lawful permanent resident status until after he turned eighteen, but argues that the second provision's "begins to reside permanently" does not require lawful admission for permanent residence.[3] Rather, it requires only actual residence and an "objective intent" to reside permanently—which he satisfied in January 2000, at age fifteen, when he applied for adjustment to lawful permanent resident status while residing in the United States.[4]  As the opinion states, this argument is foreclosed by *Romero-Ruiz.*

A circuit split exists on the interpretation of the second provision's "or thereafter begins to reside permanently in the United States."  8 U.S.C. § 1432(a)(5).  Our court interprets "reside permanently" as identical in meaning to the first provision's "residing . . . pursuant to a lawful admission for permanent residence."  In *Romero-Ruiz*, we held that "[a] plain reading of the statute evidences the requirement that the child be residing pursuant to lawful admission either at the time of the parent's naturalization or at some subsequent time while under the age of 18."  538 F.3d at 1062.  We explained that the "phrase 'or thereafter begins to reside

---

[3] Like the government and Cheneau, I use interchangeably the terms "lawful admission for permanent residence" and obtaining status as a "lawful permanent resident."

[4] Cheneau's interpretation would require applying § 1432(a), because the "critical event" would be his *application* for adjustment of status rather than the actual adjustment of his status to lawful permanent resident.

permanently' alters only the *timing* of the residence requirement, not the requirement of *legal* residence." *Id.* *Romero-Ruiz* thus adopted the "shorthand interpretation" of clause (5)—the view that "reside permanently" is a shorthand reference to "resid[e] . . . pursuant to a lawful admission for permanent residence." The Eleventh Circuit agreed with *Romero-Ruiz*'s interpretation in *United States v. Forey-Quintero*, 626 F.3d 1323, 1324 (11th Cir. 2010), holding that "the phrase 'begins to reside permanently in the United States while under the age of eighteen years' contained in 8 U.S.C. § 1432(a)(5) requires the status of a lawful permanent resident."

The Second Circuit reached the opposite conclusion: "'[B]egins to reside permanently' does not require 'lawful permanent resident' status." *Nwozuzu v. Holder*, 726 F.3d 323, 333 (2d Cir. 2013) (alterations in original). Instead, "begins to reside permanently" requires "some objective official manifestation of the child's permanent residence." *Id.* (citation omitted). In the Second Circuit, an "application of adjustment to lawful permanent resident status . . . is an objective and official manifestation of [a petitioner's] intent to reside permanently in the United States."[5] *Id.* at 334.

In my view, we are on the wrong side of the circuit split. Normal rules of statutory construction counsel that different terms in the same section mean different things. Both the statutory text and history of amendments to the statute show that "residing in the United States pursuant to a lawful

---

[5] The court also explained that the petitioner's "particular family circumstances, including the presence and naturalization of [his] parents and the eventual naturalization of all of his siblings, although not sufficient on its own to establish an objective manifestation of permanent residency, further bolster our conclusion." *Nwozuzu*, 726 F.3d at 334.

admission for permanent residence" and "begins to reside permanently in the United States" do mean different things, and were so intended by Congress.

## I.   The Text

Clause (5)'s two provisions use different language, and the "usual rule [is] that 'when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended.'" *Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n.9 (2004) (citation omitted).  This rule is especially applicable where, as here, the same Congress chose to use different language in the same section of the same statute.  *See Wisconsin Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2071–72 (2018) ("We usually 'presume differences in language . . . convey differences in meaning.'  And that presumption must bear particular strength when the same Congress passed both statutes to handle much the same task." (citation omitted)); *Lopez v. Sessions*, 901 F.3d 1071, 1077–78 (9th Cir. 2018).  But even beyond application of the rule, an examination of the statutory text reveals material distinctions between the differently worded phrases.

In the first provision, "lawful admission for permanent residence" is a "term of art."  *Gooch v. Clark*, 433 F.2d 74, 78 (9th Cir. 1970).  The INA defines "lawfully admitted for permanent residence" as "the status of having been lawfully accorded the privilege of *residing permanently* in the United States as an immigrant in accordance with the immigration laws, such status not having changed."   8 U.S.C. § 1101(a)(20) (emphasis added).  The term of art "refers not to the actuality of one's residence but to one's *status* under the immigration laws," as an individual with the privilege of residing permanently in the United States need not exercise that privilege at all times.  *Gooch*, 433 F.2d at 79 (emphasis

added).  The INA's definition of "lawfully admitted for permanent residence" includes as a component part the words "residing permanently"—which is, of course, a variant of the second provision's "reside permanently." *See Thomas v. Lynch*, 828 F.3d 11, 15 (1st Cir. 2016).

The INA does not define "reside permanently," but it separately defines "residence" and "permanent."  The word "residence" means "the place of general abode; the place of general abode of a person means his principal, *actual* dwelling place in fact, without regard to intent."  8 U.S.C. § 1101(a)(33) (emphasis added).  Unlike the term in the first provision, "residence" refers to a place and not a status.  The INA defines "permanent" as "a relationship of continuing or lasting nature, as distinguished from temporary . . . ."  *Id.* § 1101(a)(31).  But, the INA explains, "a relationship may be permanent even though it is one that may be dissolved eventually at the instance either of the United States or of the individual, in accordance with law."  *Id.*  Using the two separate definitions as reference, a reasonable definition for "reside permanently" is "to have as a principal, actual dwelling place for a continuing or lasting period." *Thomas*, 828 F.3d at 15.

The two provisions require different things for derivative citizenship.  The first provision imposes a status requirement of "lawful admission for permanent residence."  *See* 8 U.S.C. § 1432(a)(5).  The first provision also imposes an actual residence requirement: the child must be "residing in the United States" at the time of the parent's naturalization. *Id.*  By contrast, the second provision simply says "thereafter begins to reside permanently in the United States" and has no status requirement. *Id.*  The second provision includes a requirement of actual residence that is permanent, as well as the temporal requirement that the permanent residence

began after the parent's naturalization and while the petitioner was under age eighteen.

On the face of the statute, only the first provision of clause (5) contains a status requirement. *Romero-Ruiz*, however, imposes the first provision's status requirement onto the second provision. The distinction between status and actual residence is significant. An individual can be "lawfully admitted for permanent residence" without actually residing in the United States. *Gooch*, 433 F.2d at 76 (holding that "green card commuters" can be lawfully admitted for permanent residence despite physically residing in Canada or Mexico and crossing the border to work). The converse is also true: an individual can lawfully and permanently reside in the United States without having the status of "lawful permanent resident." *See Nwozuzu*, 726 F.3d at 333 ("[T]here are a number of groups that are permitted to stay in this country permanently without being lawful permanent residents . . . ."); *Elkins v. Moreno*, 435 U.S. 647, 666 (1978).

If *Romero-Ruiz* is correct that "lawful admission for permanent residence" and "reside permanently" have identical meanings, then there would be no need for two provisions and the second provision would be surplusage. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (internal citations and quotation marks omitted)). *Romero-Ruiz* states that "[t]he phrase 'or thereafter begins to reside permanently' alters only the *timing* of the residence requirement . . . ." 538 F.3d at 1062. In other words, the first provision grants the child derivative citizenship if he was a lawful permanent resident at the time

his parent naturalized, while the second provision grants the child derivative citizenship if he becomes a lawful permanent resident after his parent's naturalization. If that were the case, it is difficult to imagine why Congress would write two provisions that use different words but mean the same thing, when it could have written one provision along the lines of "pursuant to a lawful admission for permanent residence at the time of naturalization or thereafter."**[6]**

*Romero-Ruiz* relies on a different surplusage argument, explaining that "[t]o interpret the second [provision] as conferring derivative citizenship on children who otherwise meet the requirements as long as they are permanently living in the United States would render the first [provision]— requiring legal permanent residence—superfluous." 538 F.3d at 1062. The government advances a similar argument that if the second provision requires a "lesser form of residence" and provides an easier pathway to derivative citizenship, then there would be no need for the first provision. In my view, *Romero-Ruiz* and the government incorrectly read the second provision. The first provision provides a pathway for children who had already obtained lawful permanent resident status and who were actually residing in the United States—this combination being the "greater" form of residency—to get the benefit of automatic citizenship as soon as their parent is naturalized. The second provision provides a pathway for children without lawful permanent resident status, and who therefore have to "begin[] to reside permanently in the United States" after their parent's naturalization. *See Thomas*, 828 F.3d at 17

---

**[6]** This is precisely the language that Congress used in former 8 U.S.C. § 1431(a)(2) (1994) (amended 2000). This adjacent section was effective at the same time that § 1432(a) was. *See Minasyan*, 401 F.3d at 1076 n.11.

(noting that the word "begins" requires that the child "experienced any relevant change in status or took any relevant action" after his parent's naturalization).**[7]**    The second provision, even without a status requirement, does not necessarily swallow the first.  The first provision's actual residence requirement is merely "residing" in the United States at the time of the naturalization.    8 U.S.C. § 1432(a)(5) (1994).    The second provision imposes the additional requirements that the actual residence be permanent, and that the permanent residence began after the parent's naturalization.

Other sections of the INA also recognize a distinction between the two terms, including former 8 U.S.C. § 1431(a)(2) (1994), which addressed derivative citizenship for children born outside the United States of one citizen parent and one alien parent.  That adjacent section provides that such children may derive citizenship from the alien parent's naturalization if they were "residing in the United States pursuant to a *lawful admission for permanent residence* at the time of naturalization or thereafter *and begin[] to reside permanently* in the United States while under the age of eighteen years."**[8]**    *Id.* (emphases added).

---

**[7]** In *Thomas*, the First Circuit found support for both Cheneau's and the government's reading of § 1432(a)(5).  828 F.3d at 15–17.  The court chose not to decide the question, as it found the Petitioner lost under either reading.  *Id.* at 17.

**[8]** Other examples abound.    *See, e.g.*, 8 U.S.C. § 1433(a)(5)(A) (1994) ("[T]he child is *residing permanently* in the United States with the citizen parent, pursuant to a *lawful admission for permanent residence*." (emphasis added)); *id.* § 1438(b)(2) ("No person shall be naturalized . . . unless he has been *lawfully admitted to the United States for permanent residence* and intends to *reside permanently* in the United States." (emphasis added)).

Importantly, former § 1431(a)(2) uses "and" to link the terms—in contrast to "or" in § 1432(a)—illustrating two points. First, the adjacent section's usage of the conjunctive "and" all but guarantees that Congress did not intend "reside permanently" to be shorthand for "resid[e] . . . pursuant to a lawful admission for permanent residence." Second, that Congress chose to use the disjunctive "or" in § 1432(a) supports that the statute provides two different pathways to derivative citizenship.**[9]**

---

**[9]** I address briefly *Thomas*'s discussion of the additional arguments in support of the government's reading. 828 F.3d at 16. First, the First Circuit pointed out that if "reside permanently" is broader than "lawfully admitted for permanent residence," then "the requirements for becoming a citizen at the time of the relevant naturalization would be stricter than the requirements for becoming a citizen after that naturalization." *Id.* I do not find this view to be compelling. When evaluating whether a requirement is easier or harder to satisfy, I think we should view it from the perspective of the applicant rather than the timing. Under Cheneau's interpretation, children who had already obtained "lawful admission for permanent residence" get the benefit of automatic citizenship as soon as their parent becomes naturalized. Children without legal permanent resident status must "begin" to reside permanently in the United States— such as by experiencing a change in status or taking a "relevant action"— after their parent's naturalization. *Id.* at 17. Second, *Thomas* points out that under an adjacent section of the INA, "aliens born abroad to one alien parent and one citizen parent could not acquire derivative citizenship without obtaining a lawful admission for permanent residence." *Id.* at 16. It would be an oddity, according to the court, for Congress to require that children born of one citizen parent acquire lawful permanent resident status for derivative citizenship, but not require the same thing of children born of two alien parents. *Id.* I am sympathetic to the view that this result seems odd, but note that this is the same adjacent section, former 8 U.S.C. § 1431(a)(2), discussed above. The adjacent section clearly requires that the child be "residing in the United States pursuant to a lawful admission for permanent residence at the time of naturalization or thereafter *and* begins to reside permanently in the United States while under the age of eighteen years."

If Congress intended to limit derivative citizenship to lawful permanent residents, it could have expressly done so. It did just that in the current version of the derivative citizenship statute, which modified § 1432(a)(5) to read: "The child is residing in the United States in the legal and physical custody of the citizen parent pursuant to a lawful admission for permanent residence." 8 U.S.C. § 1431(a)(3). The current version deletes "or thereafter begins to reside permanently"—the second pathway—from § 1432(a)(5), and makes clear that a child is eligible for derivative citizenship only if he was lawfully admitted for permanent residence.

## II. The History

The history of amendments to the statutory text, which *Romero-Ruiz* does not discuss, also supports interpreting the two provisions differently.[10] The term "reside permanently" has been used in the derivative citizenship statute since 1907, while the term "lawful admission for permanent residence" is a term of art first introduced and defined in 1952. *See* Citizenship Act of 1907, ch. 2534 § 5, 34 Stat. 1228, 1229 (repealed 1940); *Nwozuzu*, 726 F.3d at 330–31. In 1940, Congress enacted a predecessor version of § 1432(a), providing two different pathways to derivative citizenship

---

8 U.S.C. § 1431(a)(2) (1994) (emphasis added). I think it even odder that Congress would write a law requiring both "lawful admission for permanent residence" and "begins to reside permanently" if those terms mean the same thing, or if Congress intended those terms to be interchangeable in one section but carry different meanings in an adjacent section.

[10] The Second Circuit in *Nwozuzu* conducted an extensive analysis of the history of the derivative citizenship statute, which I will not repeat in full. *See* 726 F.3d at 329–32.

for a child who was "residing in the United States at the time of the naturalization of the parent last naturalized . . . or thereafter begins to reside permanently in the United States while under the age of eighteen years." *Nwozuzu*, 726 F.3d at 331 (quoting Nationality Act of 1940, ch. 876 § 314, 54 Stat. 1137, 1145–46 (repealed 1952)). The 1940 version's second provision is identical to the second provision of § 1432(a)(5), the statute at issue here. The two versions of the first provision differ in that the 1940 version does not contain a requirement of "lawful admission for permanent residence."

The Immigration and Nationality Act of 1952 (the "Act" or "1952 Act") defined "lawfully admitted for permanent residence" as a new term of art. *Nwozuzu*, 726 F.3d at 331. The House Report accompanying the 1952 Act explained that the term, as defined by the Act, carries "especial significance because of its application to numerous provisions of the bill." H.R. Rep. No. 82–1365 (1952). The 1952 Act also modified the derivative citizenship statute by adding "pursuant to lawful admission for permanent residence" for the first time. INA § 321(a)(5), ch. 477, 66 Stat. 163, 245 (1952). Notably, Congress preserved the two pathways and added the new term of art only to the first. *Id.* The second provision was left almost unchanged, with the only material difference between the 1952 version and the 1940 version being the 1952 version's age change from under eighteen to under sixteen.[11]   Given that Congress

---

[11] Clause (5) of the 1952 version, which is almost identical to § 1432(a)(5), provided: "Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent . . . , or thereafter begins to reside permanently in the United States while under the age of sixteen years." INA § 321(a)(5), ch. 477, 66 Stat. 163, 245 (1952).

added "lawful admission for permanent residence" for the first time in 1952, and added it only to the first provision, I agree with the Second Circuit's conclusion that Congress did not intend the phrase "'reside permanently'—which had been carried over, unaltered, from previous statutes since 1907—to be shorthand for the new term of art." *Nwozuzu*, 726 F.3d at 331.  Indeed, I would go further—I think it almost inconceivable that if Congress intended such a radical change, it would have done so in such an inscrutable manner.

The government cites a 1950 Senate Report—stating that "lawful permanent residence has always been a prerequisite to derivative citizenship"—to rebut the Second Circuit's analysis.  The government suggests that *Nwozuzu* ignored that "lawful admission for permanent residence," even though it was first introduced in 1952, has always been a requirement that was unchanged by the 1952 Act.  But the government quotes the report out of context.  The 1950 Senate Report states the following:

> Lawful permanent residence has always been a prerequisite to derivative citizenship.  There must be a *bona fide intent to reside permanently* in the United States.  Thus, the child does not derive citizenship if he goes abroad before the naturalization of his parents, and intends to abandon and does abandon his residence in the United States.  However, if there is a fixed intention to return, it has been held that an absence of as long as 14 years will not prevent naturalization shortly after the child's departure provided the father's domicile has continued.

S. Rep. No. 81-1515, at 707 (1950) (emphasis added).  The words "lawful permanent residence" used in the 1950 Senate Report clearly do not mean the term of art "lawfully admitted for permanent residence" introduced in the 1952 Act.  If anything, the Senate Report supports Cheneau's and the Second Circuit's view that actual residence in the United States can qualify a child for derivative citizenship, and intent is relevant for determining permanent residence.

## III.    Conclusion

I believe that if Congress intended the two provisions of § 1432(a)(5) to mean the same thing, it would have used the same language or written just one provision.  Instead, Congress chose two different phrases—one that refers to status while the other refers to actual residence.  Those two terms have been used in other sections of the INA to mean different things.  And the history of the statute further shows that the two terms have different meanings and serve different functions.  For these reasons, I believe that *Romero-Ruiz* was wrongly decided, and that contrary to the compelled holding in our opinion, Cheneau is a citizen of the United States and not an alien subject to removal.